# Illinois Official Reports

## Supreme Court

---

### *LVNV Funding, LLC v. Trice*, 2015 IL 116129

---

| | |
|---|---|
| Caption in Supreme Court: | LVNV FUNDING, LLC, Appellee, v. MATTHEW TRICE, Appellant. |
| Docket No. | 116129 |
| Filed | February 27, 2015 |
| Rehearing denied | May 26, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, the Hon. Martin P. Moltz, Judge, presiding. |
| Judgment | Circuit court judgment vacated. Cause remanded with directions. |
| Counsel on Appeal | Clinton A. Krislov, Michael R. Karnuth and Christopher M. Hack, of Krislov & Associates, Ltd., and Theodore A. Woerthwein and John Miller, of Woerthwein & Miller, all of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro and Carolyn E. Shapiro, Solicitors General, and Clifford W. Berlow, Assistant Attorney General, of Chicago, of counsel), for intervenor appellant. |
| | Hinshaw & Culbertson LLP, of Chicago (Stephen R. Swofford, David M. Schultz and John P. Ryan, of counsel), for appellee. |

Justices          JUSTICE KARMEIER delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Burke, and Theis concurred in the judgment and opinion.

Justice Kilbride dissented, with opinion.

**OPINION**

¶ 1     This appeal comes to us from the circuit court of Cook County, the court having declared sections 4.5, 14, and 14b of the Collection Agency Act (Act) (225 ILCS 425/4.5, 14, 14b (West 2008)) unconstitutional. Following remand from an appellate court decision in which that court held—referencing, *inter alia*, the Act's penalty provisions—that "a complaint filed by an unregistered collection agency is *** a nullity, and any judgment entered on such a complaint is void" (2011 IL App (1st) 092773, ¶ 19), the circuit court found the aforementioned penalty provisions of the Act unconstitutional on grounds of due process, equal protection and vagueness. The circuit court then concluded, though the debt collector in this case was unlicensed at the time it filed suit to collect a debt, the resulting judgment should have been "voidable rather than void." Because the circuit court invalidated Illinois statutes, appeal lies directly to this court pursuant to Supreme Court Rule 302(a)(1) (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011)). We now vacate the circuit court's findings of unconstitutionality as unnecessary, we reject the analysis of the appellate court, and remand this matter for confirmation of the monetary judgment initially rendered by the circuit court.

¶ 2                              STATUTES INVOLVED

¶ 3     We refer herein to the version of the Collection Agency Act in effect when LVNV Funding, LLC (hereafter LVNV) filed its complaint against Matthew Trice in the circuit court. See 225 ILCS 425/1 *et seq.* (West 2008).[1] At the outset, the legislature set forth a declaration of public policy that underscores legislators' concern for the public welfare:

> "The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois." 225 ILCS 425/1a (West 2008).

The legislature mandates a liberal construction "to carry out these objects and purposes." 225 ILCS 425/1a (West 2008).

---

[1]For our purposes, the only changes to the Act worthy of note were introduced by amendments effective January 1, 2013, defining the term " '[d]ebt buyer' " (225 ILCS 425/2 (West 2012)), and emphasizing that "[a] debt buyer shall be subject to all of the terms, conditions, and requirements of this Act, except as otherwise provided for in subsection (b) of Section 8.6" (225 ILCS 425/8.5 (West 2012)), one of those exceptions being an exemption from the "assignment for collection criteria under Section 8b" (225 ILCS 425/8.6(b)(iv) (West 2012)).

¶ 4    The Act specifically exempts from its coverage a host of entities, among them, those traditionally associated with financing and lending, and "[l]icensed attorneys at law." 225 ILCS 425/2.03(5) (West 2008). It otherwise defines a "legal entity" as "a collection agency," subject to the provisions of the Act, when, *inter alia*, that entity: "[r]eceives, by assignment or otherwise, accounts, bills, or other indebtedness *** with the purpose of collecting monies due on such account, bill or other indebtedness" or "[b]uys accounts, bills or other indebtedness and engages in collecting the same." 225 ILCS 425/3(b), (d) (West 2008). Section 2 of the Act broadly defines " '[d]ebt collection' " as "any act or practice in connection with the collection of consumer debts." 225 ILCS 425/2 (West 2008).

¶ 5    Section 4 of the Act provides that "[n]o collection agency shall operate in this State, directly or indirectly engage in the business of collecting," or "exercise the right to collect *** without registering under this Act." 225 ILCS 425/4 (West 2008). In addition to the prerequisite of licensing, the Act provides that no entity that has obtained an "assignment" of "title" from the original creditor may commence litigation in its own name unless the "assignment is manifested by a written agreement" specifically stating the effective date of the assignment and the consideration paid therefor. 225 ILCS 425/8b(a) (West 2008).

¶ 6    More to the point for present purposes, section 14a of the Act authorizes the Department of Financial and Professional Regulation to enjoin the activities of an unlicensed collection agency, stating that "[t]he practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare." 225 ILCS 425/14a (West 2008). In addition to a civil penalty for unlicensed practice (see 225 ILCS 425/4.5 (West 2008) ("a civil penalty *** in an amount not to exceed $5,000 for each offense")), the Act provides for criminal penalties as well: "Any entity that practices *** as a collection agency in this State without being licensed for that purpose *** is guilty of a Class A misdemeanor. Any entity that has been previously convicted under any of the provisions of this Act and that subsequently violates any of the provisions of this Act is guilty of a Class 4 felony." 225 ILCS 425/14b (West 2008); see also 225 ILCS 425/14 (West 2008) ("Engaging in the collection of debts without first having obtained a certificate pursuant to this Act *** is a Class A misdemeanor. The penalties provided by this Act shall not be exclusive, but shall be in addition to all other penalties or remedies provided by law.").

¶ 7                                    BACKGROUND

¶ 8    Matthew Trice used a credit card to pay for some plumbing work. He apparently did not pay the credit card company the full amount due on the card. The credit card company sold its interest in the unpaid debt to LVNV. Thereafter, LVNV hired an Illinois attorney and filed a debt collection lawsuit against Trice, who proceeded *pro se*. On January 15, 2009, the circuit court entered judgment in the lawsuit in favor of LVNV.

¶ 9    Trice did not file a direct appeal. Instead, sometime later, Trice, who was then represented by an attorney, filed a petition under section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)) seeking to vacate the circuit court's final judgment. In this petition, Trice alleged that LVNV was a debt collection agency within the meaning of the Act (225 ILCS 425/3(b), (d) (West 2008)) and that the filing of the lawsuit against him was an act of debt collection. In addition, Trice alleged that, before LVNV filed the lawsuit, it had not

registered with the State of Illinois as a debt collection agency as required under the Act. According to Trice, this failure was a fundamental error which rendered the circuit court's judgment of January 15, 2009, "void."

¶ 10    The circuit court denied Trice's section 2-1401 petition without an evidentiary hearing. The circuit court concluded that, even assuming LVNV had erroneously failed to register as a debt collection agency, the error did not render the judgment entered against Trice void. Trice appealed.

¶ 11    The appellate court reversed the circuit court's denial of Trice's section 2-1401 petition. 2011 IL App (1st) 092773, ¶ 25. The appellate court first observed that a party seeking relief from a final judgment under section 2-1401 ordinarily must plead and prove, among other things, that he had a defense or claim that would have precluded entry of judgment in the original action, and "that he acted with 'diligence in both discovering the defense or claim and presenting the petition.'" *Id.* ¶ 8 (quoting *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007)). However, when a section 2-1401 petitioner alleges that the challenged judgment is void, the allegation "'substitutes for and negates the need to allege a meritorious defense and due diligence.'" *Id.* ¶ 11 (quoting *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002)). The appellate court noted that, in this case, Trice's section 2-1401 petition contained no allegations regarding his diligence in discovering that LVNV was unlicensed. Instead, Trice's petition alleged only that the circuit court's judgment was void.

¶ 12    Quoting from this court's decision in *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379-80 (2005), the appellate court offered the following definition of a void judgment:

> "'A void order or judgment is, generally, one entered by a court without jurisdiction of the subject matter or the parties, or by a court that lacks the inherent power to make or enter the order involved. [Citations.] A void judgment is from its inception a complete nullity and without legal effect.'" 2011 IL App (1st) 092773, ¶ 13.

Thereafter, the appellate court addressed, at some length, the "nullity rule," which this court discussed in *Ford Motor*, and has applied, in some instances, to "nullify" the filing of a complaint, and "void" the resulting judgment, where a person or entity unauthorized to practice law has filed suit on behalf of a corporation. *Id.* ¶¶ 13-18.

¶ 13    In *Ford Motor*—a case, like this one, involving a petition for relief under section 2-1401 of the Code of Civil Procedure (see *Ford Motor*, 214 Ill. 2d at 378-79)—this court referenced its "inherent power to define and regulate the practice of law in this state" (*Ford Motor*, 214 Ill. 2d at 382) in the course of a discussion that ended with the reaffirmation that "the nullity—or voidness—rule" "remains valid law" but a finding that "its application to the facts in the instant cause by the appellate court is misplaced." *Ford Motor*, 214 Ill. 2d at 389. That finding was premised, not on untimely action on the part of petitioner, but rather, to a significant degree, on this court's observation that the Supreme Court Rule that was violated (Ill. S. Ct. R. 721 (eff. Mar. 1, 1997)) "was not enacted to safeguard the public welfare" (*Ford Motor*, 214 Ill. 2d at 388) as evinced by, *inter alia*, its lack of "civil or criminal penalties for noncompliance." *Ford Motor*, 214 Ill. 2d at 386.

¶ 14    Based upon its reading of *Ford Motor*, and this court's discussion of the nullity rule, the appellate court herein found "this case similar to cases in which a person practices law without a license" and concluded "[c]ourts may similarly penalize anyone who acts as a collection

agency without registering." 2011 IL App (1st) 092773, ¶ 18 (citing 225 ILCS 425/4.5, 14, 14b (West 2008)). The appellate court found "[t]he criminal and civil penalties the Act assigns to LVNV's alleged acts [citation] distinguish this case from *Ford Motor*." *Id*. ¶ 16. The appellate court concluded that, if LVNV was unlicensed when it filed the lawsuit, permitting the circuit court's January 15, 2009, judgment to stand would be tantamount to abetting LVNV in the commission of a crime. *Id*. ¶ 19. The appellate court held that the circuit court "lacks authority to enter or enforce a judgment in LVNV's favor on a complaint LVNV filed in violation of the Act." *Id*. In effect, any judgment entered in the lawsuit would be void.

¶ 15    The appellate court remanded the matter to the circuit court for an evidentiary hearing to determine whether, as Trice had alleged in his section 2-1401 petition, LVNV was unlicensed at the time its lawsuit was filed. The appellate court also noted, however, that it was not foreclosing LVNV from raising any constitutional challenges to the Act during the remand hearing.

¶ 16    This court denied LVNV's petition for leave to appeal from the judgment of the appellate court. *LVNV Funding, LLC v. Trice*, No. 112834 (Ill. Nov. 30, 2011).

¶ 17    On remand, the circuit court acknowledged the binding effect of the appellate court's holding, "that a complaint filed by an unregistered collection agency is *** a nullity, and any judgment entered on such a complaint is void" (2011 IL App (1st) 092773, ¶ 19), but ruled—apparently based on the appellate court's addendum upon denial of petition for rehearing (seemingly tying a void judgment to criminal liability alone) (see *id*. ¶ 24)—that the *penalty* provisions of sections 4.5, 14, and 14b of the Act (225 ILCS 425/4.5, 14, 14(b) (West 2008)) were unconstitutional on grounds of substantive due process, equal protection, and vagueness. The circuit court believed its ruling would effectively nullify the appellate court's judgment. Accordingly, the circuit court concluded, with respect to the order now before this court, that "the judgment originally obtained by LVNV Funding must stand." Section 4 of the Act (225 ILCS 425/4 (West 2008) (the actual provision requiring licensing)) was not named among those statutory sections found unconstitutional.

¶ 18    In passing, we note that the circuit court rejected other arguments raised by LVNV—constitutional and nonconstitutional—including, *inter alia*, its contentions (1) that the circuit court could ignore the appellate court's judgment and dispense with the "Law of the Case Doctrine"; (2) that the Act's licensing requirement obstructed LVNV's fundamental right of access to the courts; and (3) that enforcing the licensing requirement on LVNV, and not its attorneys, violated equal protection guarantees. The court found that compliance with the Act's licensing requirement as a condition of doing business in Illinois "is not unreasonable because it allows the State to determine if the entity is qualified and capable to lawfully conduct business in Illinois, allows easy monitoring of and enforcement actions to be taken against the entity if necessary, and establishes certain minimum financial requirements to allow recovery if warranted."

¶ 19    Because the circuit court declared portions of the Act unconstitutional, direct appeal was taken to this court under Supreme Court Rule 302(a)(1) (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011)).

¶ 20    ANALYSIS

¶ 21    In this court, LVNV maintains that the circuit court correctly held that the legislature violated the constitution when it made the failure to register as a debt collector a criminal act. However, LVNV also raises two nonconstitutional arguments which, if successful, would be sufficient to sustain the circuit court's "original judgment," which is what the circuit court order before us—in addition to holding three statutory provisions unconstitutional *and*, in essence, negating the judgment of the appellate court—purported to do. We will address these issues first. See, *e.g.*, *Mulay v. Mulay*, 225 Ill. 2d 601, 607 (2007) (as a general principle, courts address nonconstitutional issues first); *Bohnert v. Ben Hur Life Ass'n*, 362 Ill. 403, 408 (1936).

¶ 22    LVNV initially contends that the Act, as it existed at the time the debt collection lawsuit was filed herein, did not apply to entities such as LVNV which hire other people to collect the debt it owns. We reject that argument.

¶ 23    As noted at the outset, the Act defines a "legal entity" as "a collection agency," subject to the provisions of the Act, when, *inter alia*, that entity: "[r]eceives, by assignment or otherwise, accounts, bills, or other indebtedness *** with the purpose of collecting monies due on such account, bill or other indebtedness" or "[b]uys accounts, bills or other indebtedness and engages in collecting the same." 225 ILCS 425/3(b), (d) (West 2008). Section 2 of the Act broadly defines " '[d]ebt collection' " as "any act or practice in connection with the collection of consumer debts." 225 ILCS 425/2 (West 2008). The Act specifically addresses litigation, mandating, in addition to licensing, contemporaneous filing requirements for the commencement of suit, *i.e.*, documentation of the effective date of the assignment and the consideration paid therefor, where an entity has obtained an "assignment" of "title" from the original creditor. 225 ILCS 425/8b (West 2008). Black's Law Dictionary defines an "assignment for value" as an "assignment given in exchange for consideration." Black's Law Dictionary 136 (9th ed. 2009).

¶ 24    That, it appears, is the means by which LVNV obtained the right to collect the debt owed by Trice. LVNV identified itself as "assignee of Citibank" in the affidavit accompanying its complaint. However, whether LVNV is a debt buyer as described in subsection (d) of section 3 of the Act (225 ILCS 425/3(d) (West 2008)) or an "assignee" for value within the purview of subsection (b) (225 ILCS 425/3(b) (West 2008)) is of no moment: in either case it clearly qualifies as a "collection agency" as defined in section 3 of the Act and is thus subject to the registration requirement of section 4 (225 ILCS 425/4 (West 2008)). Whether LVNV is deemed a " '[d]ebt buyer,' " or an "assignee of Citibank," as it represented upon the filing of its complaint in this case, may have some significance for purposes of the documentation requirement of sections 8b(a)(i)(v) and 8b(a)(ii) going forward, as " 'debt buyers' " are now exempt from that requirement—for reasons not entirely clear—under the Act as amended (see 225 ILCS 425/8.6(b)(iv) (West 2012)); however, the provisions of the Act clearly apply to entities such as LVNV.

¶ 25    Nor are we persuaded by LVNV's contention that the hiring of an attorney somehow insulates it from the applicability of the Act's provisions, specifically, that the registration requirements and the Act's associated criminal sanctions for noncompliance should not apply to it because the "mere filing of a lawsuit without a license can scarcely be characterized as abusive" where a "licensed Illinois attorney handled all of the correspondence and interaction with *** the debtor." The suggestion that the "mere filing of a lawsuit" cannot be abusive is

either naive or disingenuous. See, *e.g.*, *Wright Development Group, LLC v. Walsh*, 238 Ill. 2d 620 (2010) (discussing "SLAPP" lawsuits aimed at preventing citizens from exercising their political rights or punishing those who have done so). The argument that the public is protected from the abuses of unscrupulous debt buyers by their utilization of attorneys is equally meritless. It is, after all, the debt buyers who supply the evidence and witnesses to attorneys in the myriad complaints they file. We reject LVNV's argument that debt buyers' lawsuits—with or without the involvement of counsel—pose no danger to the public welfare and are thus not subject to the restrictions and penalties the legislature has seen fit to impose.

¶ 26    In a second argument, LVNV contends that, even assuming the legislature may make the failure to obtain a debt collection license a criminal offense, the appellate court erred when it concluded that LVNV's failure to obtain such a license would render the circuit court's January 15, 2009, judgment void. Therefore, according to LVNV, the circuit court properly denied Trice's section 2-1401 petition when that petition was first presented. We agree.

¶ 27    As this court has held, whether a judgment is void or voidable presents a question of jurisdiction. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 174 (1998). "If jurisdiction is lacking, any subsequent judgment of the court is rendered void and may be attacked collaterally." *Id.* A voidable judgment, on the other hand, is an erroneous judgment entered by a court that possesses jurisdiction. *Id.*

¶ 28    In holding that the circuit court's January 15, 2009, judgment would be void if LVNV lacked a debt collection license, the appellate court in this case appeared to rely on the definition of jurisdiction as the " 'inherent power' " to enter the judgment involved. 2011 IL App (1st) 092773, ¶ 13 (quoting *Ford Motor*, 214 Ill. 2d at 379-80). Applying that definition here, the appellate court reasoned that, if a debt collection agency does not have the appropriate license, then the circuit court lacks the inherent power or "authority" to entertain a debt collection lawsuit by that agency. *Id.* ¶ 19. Any judgment entered by the circuit court in the lawsuit would therefore be void for lack of jurisdiction and could be attacked in a collateral proceeding on that basis.

¶ 29    The problem with this reasoning is that the concept of "inherent power" relied upon by the appellate court was rejected by this court in *Steinbrecher v. Steinbrecher*, 197 Ill. 2d 514 (2001). A lack of "inherent power" refers to the idea that if a certain statutory requirement or prerequisite—such as obtaining a debt collection license—is not satisfied, then the circuit court loses "power" or jurisdiction to consider the cause of action at issue. In other words, the circuit court's jurisdiction depends on whether the court properly follows certain statutory requirements. *Steinbrecher* concluded that this idea of jurisdiction is at odds with the grant of jurisdiction given to the circuit courts under our state constitution.

¶ 30    *Steinbrecher* noted that a 1964 constitutional amendment significantly altered the basis of circuit court jurisdiction, granting circuit courts "original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law." Ill. Const. 1870, art. VI (amended 1964), § 9. The current Illinois Constitution, adopted in 1970, retained this amendment and provides that "Circuit Courts shall have original jurisdiction of all justiciable matters" and that "Circuit Courts shall have such power to review administrative action as provided by law." Ill. Const. 1970, art. VI, § 9. *Steinbrecher* reasoned that, because circuit court jurisdiction is granted by the constitution, it cannot be the case that the failure to

satisfy a certain statutory requirement or prerequisite can deprive the circuit court of its "power" or jurisdiction to hear a cause of action. *Steinbrecher*, 197 Ill. 2d at 529-32.

¶ 31    In so holding, *Steinbrecher* emphasized the difference between an administrative agency and a circuit court. An administrative agency, *Steinbrecher* observed, is a purely statutory creature and is powerless to act unless statutory authority exists. *Id.* at 530 (citing *City of Chicago v. Fair Employment Practices Comm'n*, 65 Ill. 2d 108, 112 (1976)). A circuit court, on the other hand, "is a court of general jurisdiction, which need not look to the statute for its jurisdictional authority." *Id.* Thus, *Steinbrecher* concluded that the " 'inherent power' requirement applies to courts of limited jurisdiction and administrative agencies" but *not* to circuit courts. *Id.*

¶ 32    As *Steinbrecher* makes clear, following the 1964 constitutional amendment and the adoption of the 1970 Constitution, whether a judgment is void in a civil lawsuit that does not involve an administrative tribunal or administrative review depends solely on whether the circuit court which entered the challenged judgment possessed jurisdiction over the parties and the subject matter. "Inherent power" as a separate or third type of jurisdiction applies only to courts of limited jurisdiction or in administrative matters. It has no place in civil actions in the circuit courts, since these courts are granted general jurisdictional authority by the constitution.[2]

¶ 33    *Steinbrecher* was reaffirmed in *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 335-37 (2002). In *Belleville Toyota*, this court addressed the meaning of subject matter jurisdiction, specifically, whether the failure to comply with a statutory requirement or prerequisite can deprive a circuit court of subject matter jurisdiction. *Id.* at 337-38. See, *e.g.*, Restatement (Second) of Judgments § 11 cmt. e (1982) (discussing the tendency in procedural law to treat various kinds of serious procedural errors as defects in subject matter jurisdiction).

¶ 34    As in *Steinbrecher*, *Belleville Toyota* began its analysis by noting the 1964 constitutional amendment and its incorporation into the 1970 Constitution. *Belleville Toyota* concluded that these constitutional amendments "radically changed the legislature's role in determining the jurisdiction of the circuit court." *Belleville Toyota*, 199 Ill. 2d at 337. And again, as in *Steinbrecher*, *Belleville Toyota* reasoned that a statutory requirement or prerequisite cannot be jurisdictional, since jurisdiction is conferred on the circuit courts by our state constitution. As *Belleville Toyota* noted, while it might have been appropriate prior to 1964 to state that the failure to conform to certain "statutory requirements prevented the court from acquiring subject matter jurisdiction," today that proposition "is confined to the area of administrative review—the only area in which the legislature still determines the extent of the circuit court's jurisdiction." *Id.* at 338.

¶ 35    *Belleville Toyota* thus held that "[w]ith the exception of the circuit court's power to review administrative actions, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Id.* at 334. Subject matter jurisdiction "refers to the power of a court to hear and determine cases of the general class to

---

[2]*Steinbrecher* limited its holding regarding jurisdiction to civil cases, noting that "[c]riminal proceedings that involve the power to render judgments or sentences address a separate set of concerns not at issue in the present matter." *Steinbrecher*, 197 Ill. 2d at 532.

which the proceeding in question belongs" (*id*.), and this jurisdiction extends to all " 'justiciable matters' " (*id*. (quoting Ill. Const. 1970, art. VI, § 9)). To invoke the circuit court's subject matter jurisdiction, a party need only present a justiciable matter, *i.e.*, "a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests." *Id*. at 335.

¶ 36    In defining the meaning of subject matter jurisdiction, *Belleville Toyota* also rejected the idea of nonwaivable "conditions precedent" to the exercise of circuit court jurisdiction. The court explained:

> "Some case law, however, suggests that the legislature, in defining a justiciable matter, may impose 'conditions precedent' to the court's exercise of jurisdiction that cannot be waived. [Citations.] We necessarily reject this view because it is contrary to article VI [of the Illinois Constitution of 1970]. Characterizing the requirements of a statutory cause of action as nonwaivable conditions precedent to a court's exercise of jurisdiction is merely another way of saying that the circuit court may only exercise that jurisdiction which the legislature allows. We reiterate, however, that the jurisdiction of the circuit court is conferred by the constitution, not the legislature. Only in the area of administrative review is the court's power to adjudicate controlled by the legislature." *Id*. at 335-36.

¶ 37    Accordingly, while the legislature can create new justiciable matters by enacting legislation that creates rights and duties, the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction or constitute a nonwaivable condition precedent to the circuit court's jurisdiction. *Id*. See also, *e.g.*, *In re Luis R.*, 239 Ill. 2d 295, 300-02 (2010); *People ex rel. Graf v. Village of Lake Bluff*, 206 Ill. 2d 541, 552-54 (2003).

¶ 38    While its holding regarding the circuit courts' jurisdiction rested on a constitutional basis, *Belleville Toyota* also stressed that it was consistent with the policy of preserving the finality of judgments. Under Illinois law, a party may challenge a judgment as being void at any time, either directly or collaterally, and the challenge is not subject to forfeiture or other procedural restraints. See, *e.g.*, *Sarkissian*, 201 Ill. 2d at 104 (an allegation of voidness substitutes and negates the need to allege a meritorious defense and due diligence under section 2-1401). Void judgments thus occupy a unique place in our legal system: to say that a judgment is void or, in other words, that it was entered without jurisdiction, is to say that the judgment may be challenged in perpetuity. For this reason, as *Belleville Toyota* observed, "[l]abeling the requirements contained in statutory causes of action 'jurisdictional' would permit an unwarranted and dangerous expansion of the situations where a final judgment may be set aside on a collateral attack." *Belleville Toyota*, 199 Ill. 2d at 341. Accordingly, only the most fundamental defects, *i.e.*, a lack of personal jurisdiction or lack of subject matter jurisdiction as defined in *Belleville Toyota* warrant declaring a judgment void.

¶ 39    Applying the holdings of *Steinbrecher* and *Belleville Toyota* to this case, it is clear that the circuit court's January 15, 2009, judgment is not void. A void judgment is one entered by a court without jurisdiction. In a civil lawsuit that does not involve an administrative tribunal or administrative review, jurisdiction consists solely of subject matter or personal jurisdiction. Subject matter jurisdiction is defined solely as the power of a court to hear and determine cases

of the general class to which the proceeding in question belongs. There is no third type of jurisdiction known as the "inherent power" to render a judgment.

¶ 40    In this case, the circuit court possessed jurisdiction over both the parties and the subject matter when LVNV filed its debt collection lawsuit. To be sure, LVNV's failure to register as a debt collection agency was error. And that error, if raised in a timely fashion, might have warranted dismissal of LVNV's lawsuit by the circuit court, merited reversal on direct appeal, or justified setting aside the final judgment under section 2-1401 if the requirements of that provision, such as due diligence, were established. But any error in failing to register did not deprive the circuit court of jurisdiction. Therefore, the circuit court's judgment is not void. Accordingly, the appellate court erred in reversing the circuit court's initial denial of Trice's section 2-1401 petition.

¶ 41    As noted previously, in reaching the opposite conclusion, the appellate court in this case appeared to rely on the definition of jurisdiction as the "inherent power" to enter a judgment. That reliance was understandable, since the definition was set forth by this court in *Ford Motor Credit Co. v. Sperry*, 214 Ill. 2d 371, 379-80 (2005), a unanimous opinion decided after both *Steinbrecher* and *Belleville Toyota*. Unfortunately, *Ford Motor*'s definition of jurisdiction was overly broad. *Ford Motor* did not acknowledge our previous decision in *Steinbrecher* or explain how its statement that a circuit court's jurisdiction is defined, in part, as the "inherent power" to enter a judgment could be reconciled with the reasoning of *Steinbrecher* and *Belleville Toyota*.

¶ 42    *Ford Motor*'s primary holding was that a law firm which fails to register under Supreme Court Rule 721(c) is not engaged in the unauthorized practice of law. *Ford Motor*, 214 Ill. 2d at 387. That aspect of *Ford Motor* should remain standing. However, we hereby reject that portion of *Ford Motor* which defines a void judgment in a civil lawsuit, in part, as one entered by a circuit court which lacks "inherent power."

¶ 43    Both LVNV and Trice contend that the outcome of this case is controlled by *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040. In *Downtown Disposal*, complaints for administrative review were filed in the circuit court of Cook County on behalf of a corporation by one of the corporation's officers. The officer was not an attorney. The defendant filed a motion to dismiss, arguing that the filing of the complaints by a nonattorney constituted the unauthorized practice of law and that this error required dismissal of the complaints. The circuit court agreed. The appellate court reversed that determination and appeal was taken to this court.

¶ 44    This court concluded that the act of filing the complaints constituted the unauthorized practice of law. *Id*. ¶ 19. Having determined that error occurred, the court then addressed the effect the unauthorized practice of law had on the complaints. This court noted that some cases had held that the unauthorized practice of law is an "incurable" defect that deprives the circuit court of subject matter jurisdiction, thus rendering any action taken in the case, including the filing of a complaint, void. *Id*. ¶ 22. The court rejected this conclusion. This court determined that the unauthorized practice of law did not affect the subject matter jurisdiction of the circuit court and, thus, the complaints were not void. *Id*. ¶ 29.

¶ 45    However, this conclusion did not end the inquiry. The defendant in *Downtown Disposal* had raised the allegation of unauthorized practice of law in a timely fashion in the circuit court and the error was properly preserved on direct appeal in this court. Thus, although the

unauthorized practice of law did not deprive the circuit court of jurisdiction, there was still a question of whether the error merited dismissal of the complaints.

¶ 46 The defendant maintained that the unauthorized practice of law rendered the complaints a "nullity," meaning that the complaints should be automatically dismissed, or dismissed *per se*, with no consideration of the particular circumstances of the case. This court rejected that view and held there was no "automatic nullity rule." *Id.* ¶ 31. Instead, the court concluded that, in determining whether dismissal of a complaint filed by a nonattorney is required, the circuit court should consider, *inter alia*, whether the nonattorney's conduct was done without knowledge that the action was improper, whether the corporation acted diligently in correcting the mistake by obtaining counsel, whether the nonattorney's participation was minimal, and whether the participation resulted in prejudice to the opposing party. *Id.* Applying these factors, this court concluded that dismissal of the complaints in *Downtown Disposal* was not warranted.

¶ 47 In this case, the parties both point to the various factors which were used in *Downtown Disposal* to determine whether the complaints should be dismissed, to contend that the circuit court's judgment of January 15, 2009, is either void or voidable. The parties' reliance on the *Downtown Disposal* factors is misplaced.

¶ 48 The question before us in this case is whether the circuit court properly denied Trice's section 2-1401 petition seeking to vacate the circuit court's January 15, 2009, judgment. The only allegation raised in Trice's petition is that the circuit court's judgment is void. As we held in *Steinbrecher*, whether a judgment in a civil lawsuit that does not involve administrative law is void rests solely on whether the circuit court which entered the challenged judgment possessed jurisdiction over the parties and the subject matter. *Steinbrecher*, 197 Ill. 2d at 530-31. If the circuit court "had both subject matter jurisdiction and personal jurisdiction over the parties [then] the judgment is not 'void.' " *Id.* at 531. The factors discussed in *Downtown Disposal* to determine whether to dismiss the complaints in that case have no bearing on this issue. Only the absence of jurisdiction renders a circuit court's judgment void. *Steinbrecher*, 197 Ill. 2d at 530-31.

¶ 49 As we have held that the circuit court's January 15, 2009, judgment is not void, it is unnecessary to address the constitutional issues in this case. The circuit court only reached the constitutional questions because the appellate court held that LVNV's failure to register as a debt collection agency would render the January 15, 2009, judgment void. However, we have now found that determination to be erroneous, holding that even if the legislature may make the lack of a debt collection license a criminal offense, the circuit court's January 15, 2009, judgment is not void.

¶ 50 CONCLUSION

¶ 51 This case has therefore been returned to square one. The circuit court's initial denial of Trice's section 2-1401 petition was correct, LVNV has been granted relief on a nonconstitutional ground, and there was no need for the circuit court to address the constitutionality of the Collection Agency Act. Under these circumstances, the appropriate disposition is to vacate the circuit court's findings of unconstitutionality as unnecessary. See, *e.g.*, *Mulay v. Mulay*, 225 Ill. 2d 601 (2007).

¶ 52          Thus, in the exercise of our supervisory authority, we vacate the judgment of the circuit court as to the constitutionality of the statutes in question, reject the analysis of the appellate court, and remand this matter for confirmation of the monetary judgment in favor of LVNV.

¶ 53          Circuit court judgment vacated.

¶ 54          Cause remanded with directions.

¶ 55          JUSTICE KILBRIDE, dissenting:

¶ 56          I dissent from the majority opinion because I cannot agree with this court adopting an approach that does not address the constitutionality of sections 4.5, 14, and 14b of the Collection Agency Act (225 ILCS 425/4.5, 14, 14b (West 2008)).

¶ 57          I do not believe this court should avoid reviewing a direct finding that sections 4.5, 14, and 14b of the Act are unconstitutional. This appeal comes to us from the circuit court of Cook County, the court having declared sections 4.5, 14, and 14b of the Act unconstitutional, both facially and as applied in this case. The circuit court indicated that, pursuant to Supreme Court Rule 18 (Ill. S. Ct. R. 18 (eff. Sept. 1, 2006)), its finding of unconstitutionality was necessary because the appellate court already rejected its alternative grounds (see 2011 IL App (1st) 092773). This court denied LVNV's petition for leave to appeal from that decision. *LVNV Funding, LLC v. Trice*, No. 112834 (Ill. Nov. 30, 2011). Because the circuit court invalidated Illinois statutes, appeal lies directly to this court pursuant to Supreme Court Rule 302(a)(1) (Ill. S. Ct. R. 302(a)(1) (eff. Oct. 4, 2011)). The validity of sections 4.5, 14, and 14b of the Act is, thus, the only subject of this appeal.

¶ 58          The majority, unfortunately, focuses its analysis on LVNV's alternative argument that collaterally challenges the appellate court's prior 2011 decision (2011 IL App (1st) 092773). This court denied LVNV's petition for leave to appeal from the appellate court's 2011 decision before deciding *Downtown Disposal Services, Inc. v. City of Chicago*, 2012 IL 112040. Obviously, LVNV could not have resurrected this issue collaterally by cross-appeal in this current direct appeal. By addressing LVNV's alternative argument, the majority allows LVNV to bootstrap and challenge the issue in this appeal, effectively giving LVNV "a second bite at the apple" when it already litigated this issue to a final resolution. Therefore, I believe this court should not skirt review of the constitutional issue raised in this direct appeal.

¶ 59          In my view, it is error to uphold a judgment that was not obtained in compliance with the Act. Thus, even if the constitutionality of sections 4.5, 14, and 14b of the Act were not at issue in this appeal, I would still reverse the circuit court's judgment. This appeal comes before the court on the circuit court's denial of defendant's motion to vacate the underlying judgment in favor of LVNV, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2008)). Section 2-1401 invokes the equitable power of the court to set aside a judgment. "One of the guiding principles *** in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court ***." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 225 (1986). The equitable power of the court to set aside a judgment " 'is based upon substantial principles of right and wrong and is to be exercised for the prevention of injury and [for the] furtherance of justice.' " *Airoom*, 114 Ill. 2d at 225 (quoting *Diner's Club, Inc. v. Gronwald*, 43 Ill. App. 3d 164, 168 (1976), and *Spencer v. American United Cab Ass'n*,

59 Ill. App. 2d 165, 172 (1965)); see also *People v. Lawton*, 212 Ill. 2d 285, 298 (2004) ("Relief should be granted under section 2-1401 when necessary to achieve justice.").

¶ 60    Illinois courts have consistently held that where licensing requirements are enacted to safeguard the public, the unlicensed party may not recover fees for services or otherwise enforce a contract.

> "It is well settled that 'courts will not aid a plaintiff who bases his cause of action on an illegal act.' *King v. First Capital Financial Services Corp.*, 215 Ill. 2d 1, 35 (2005). More specifically, 'courts will not enforce a contract involving a party who does not have a license called for by legislation that expressly prohibits the carrying on of the particular activity without a license where the legislation was enacted for the protection of the public, not as a revenue measure.' " *Chatham Foot Specialists, P.C. v. Health Care Service Corp.*, 216 Ill. 2d 366, 380-81 (2005) (quoting *Ransburg v. Haase*, 224 Ill. App. 3d 681, 684-85 (1992)).

¶ 61    There can be no doubt that the Collection Agency Act was enacted to protect the public and not to generate revenue, as clearly stated in the purpose of the Act. Section 1a provides:

> "§ 1a. Declaration of public policy. The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.

> It is further declared to be the public policy of this State to protect consumers against debt collection abuse." 225 ILCS 425/1a (West 2008).

¶ 62    Here, LVNV engaged in debt collection practices without being lawfully licensed in the State of Illinois when it pursued collection against Trice and filed suit. This court should not assist LVNV in the enforcement of a judgment based on a lawsuit that violated the law at the time it was instituted.

¶ 63    For these reasons, I respectfully dissent.