2016 IL App (3d) 150712

Opinion filed November 1, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| *In re* APPLICATION OF THE COUNTY COLLECTOR, for Judgment and Order of Sale Against Lands and Lots Returned Delinquent for Nonpayment of General Taxes and/or Special Assessments for the Year 2009 and Prior Years | ) ) ) ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois.  Appeal No. 3-15-0712 |
| | ) | Circuit No. 13-TX-227 |
| (Stolat Financial, LLC, Petitioner-Appellant v. Mark Varboncouer, Ioana Furnea, Municipal Trust Savings Bank, Interstate Funding Corp., and Galaxy Sites, LLC, Respondents-Appellees). | ) ) ) ) ) ) | The Honorable John C. Anderson, Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice Holdridge concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1     Petitioner, Stolat Financial, LLC (Stolat), filed a petition pursuant to section 2-1401(f) of

the Code of Civil Procedure (Code) (735 ILCS 5/2-1401(f) (West 2014)) to set aside a tax deed

that had been issued on certain real property in Peotone, Will County, Illinois. The current

owners of the property and other interested parties filed motions to dismiss the petition pursuant

to sections 2-615 and 2-619(a)(9) of the Code (735 ILCS 5/2-615, 2-619(a)(9) (West 2014)).

After a hearing, the trial court granted the motions to dismiss. Stolat appeals. We affirm the trial court's judgment.

¶ 2                                                       FACTS

¶ 3          In June 2009, Richard and Sylvia Modla executed a note and mortgage in favor of the Peotone Bank and Trust Company (Peotone Bank). The mortgage was recorded the following month against certain real property owned by the Modlas in Peotone, Will County, Illinois. The Modlas later defaulted on their obligations under the note and mortgage.

¶ 4          In April 2010, the Peotone Bank was closed by the Illinois Department of Financial and Professional Regulation, and the Federal Deposit Insurance Corporation (FDIC) was appointed as the receiver. A notice of the receivership was published in the Federal Register.

¶ 5          In November 2010, Interstate Funding Corporation (Interstate) purchased the 2009 delinquent property taxes on the subject property at the annual tax sale and was issued a certificate of purchase. The FDIC was not notified of, and did not consent to, the sale of the delinquent taxes.

¶ 6          In February 2012, the FDIC created the FDIC 2011-N1 Asset Trust (the trust), in which it pooled various assets from failed banks. The Bank of New York Mellon Trust Company, N.A. (Bank of New York), was retained as the trustee of the trust. One of the assets that was assigned to the trust was the Modla mortgage. The assignment of the Modla mortgage was made in February 2012 and was recorded two months later. The recorded assignment stated that the FDIC as the receiver for the Peotone Bank did "convey, grant, sell, assign, transfer and set over the described mortgage/deed of trust with all interest secured thereby, all liens, and any rights due or to become due thereon" to the Bank of New York, in its capacity as the trustee of the trust, with

its address listed as being in care of Nationstar Mortgage (presumably the loan servicer). There was no reservation of rights contained in the assignment.

¶ 7        In July 2012, the Bank of New York, as trustee of the trust, filed suit in Will County to foreclose upon the Modla mortgage. A judgment of foreclosure and sale was later entered in favor of the Bank of New York, but no further action was taken in the case.

¶ 8        In July 2013, Interstate filed a petition in the trial court for a tax deed to the subject property. A copy of the petition was served upon the Bank of New York, its attorneys, and upon the loan servicer. Neither the Bank of New York nor the FDIC appeared in the proceedings or consented to the issuance of a tax deed. An attorney for the loan servicer did, however, appear at least one time in the tax deed proceedings but did not file a formal appearance or any type of pleading with the court.

¶ 9        In January 2014, after the tax redemption period had expired, Interstate filed an application with the trial court for an order directing the county clerk to issue a tax deed on the subject property. A hearing was held later that same month. At the conclusion of the hearing, the trial court granted Interstate's request and entered an order directing the county clerk to issue a tax deed to the subject property to Galaxy Sites, LLC (Galaxy), as Interstate's assignee. The tax deed was issued and recorded shortly thereafter.

¶ 10       In July 2014, Galaxy sold the subject property to Mark Varboncouer for $460,000, pursuant to a special warranty deed. The funding for the purchase was arranged through Municipal Savings Bank, who held a mortgage on the property as part of the transaction. The deed conveying the property from Galaxy to Varboncouer was recorded later that same month.

¶ 11       In October 2014, the FDIC sold and assigned its rights in the Modla mortgage to Stolat. In January 2015, Stolat filed a section 2-1401(f) petition to set aside the tax deed on the property.

3

The petition was later amended (referred to simply as the petition). In the petition, Stolat alleged that the tax deed was void because the FDIC did not consent to the sale of the delinquent taxes (or to the issuance of a tax deed on the subject property) as required under federal statute. In response, Mark Varboncouer; his wife, Ioana Furnea; and their lender, Municipal Savings Bank (collectively referred to hereinafter as the Varboncouers) filed a motion to dismiss the petition pursuant to section 2-615 of the Code, and Interstate and Galaxy (collectively referred to hereinafter as Interstate) filed a motion to dismiss the petition pursuant to section 2-619(a)(9) of the Code.

¶ 12       In September 2015, the trial court held a hearing on the motions to dismiss. By the time of the hearing, the issues raised in the motions had been fully briefed by the parties. After listening to the arguments of the attorneys, the trial court took the case under advisement and later granted the motions to dismiss. Stolat filed this appeal to challenge the trial court's ruling.

¶ 13                                    ANALYSIS

¶ 14                          I. The Trial Court's Grant of
                     the Varboncouers' Section 2-615 Motion to Dismiss

¶ 15       As its first point of contention on appeal, Stolat argues that the trial court erred in granting the Varboncouers' section 2-615 motion to dismiss the petition to set aside the tax deed. Stolat asserts that the Varboncouers' motion to dismiss should not have been granted because Stolat's petition sufficiently alleged that the tax deed was void in that the FDIC, who held the Modla mortgage, did not consent to the sale of the delinquent taxes or to the issuance of a tax deed as required under federal statute (see 12 U.S.C. § 1825(b)(2) (2006)). Furthermore, Stolat contends, because the tax deed was void, Stolat did not have to establish due diligence as normally required under section 2-1401 (see *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 103-04 (2002)). In addition, Stolat asserts that it sufficiently established in the petition

4

that it had standing, although it was not required to do so, in that it alleged that it had been assigned the Modla mortgage by the FDIC and attached a copy of that assignment to the petition. According to Stolat, any claim by the Varboncouers as to lack of standing was an affirmative defense, which could not be properly raised in a section 2-615 motion to dismiss. Moreover, Stolat contends that any claim by the Varboncouers as to a problem with the chain of title constituted a question of fact, which was not proper for resolution in a section 2-615 proceeding. Stolat makes similar contentions regarding the issue of whether the Varboncouers were *bona fide* purchasers for value—that the claim was one that had to be raised as an affirmative defense, not in a section 2-615 motion to dismiss, and that at most, the claim presented a question of fact, which was not proper for resolution in a section 2-615 proceeding. For all of the reasons stated, Stolat asks that we reverse the trial court's grant of the Varboncouers' section 2-615 motion to dismiss and that we remand this case for further proceedings.

¶ 16     The Varboncouers argue that the trial court's ruling was proper and should be upheld. The Varboncouers assert that Stolat's petition was insufficient to state a claim for relief under section 2-1401 because (1) Stolat failed to plead an interest in the chain of title of the property as was required when a party claimed an interest by assignment; (2) the federal statute to which Stolat refers did not prohibit the sale of the delinquent taxes or the issuance of the tax deed in this case and the tax deed was, therefore, valid; (3) at most, Stolat had pled a tax deed that was voidable, rather than void, and Stolat did not establish due diligence as required under section 2-1401 for vacating a nonvoid judgment or any of the grounds for setting aside a tax deed under section 22-45 of the Property Tax Code (35 ILCS 200/22-45 (West 2014)); and (4) the Varboncouers were *bona fide* purchasers for value and, as such, were protected under the law from Stolat's claims. For all of the reasons set forth, the Varboncouers ask that we affirm the

5

trial court's judgment granting their section 2-615 motion to dismiss the petition to set aside the tax deed.

¶ 17    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based upon defects that are apparent on the face of the complaint. See 735 ILCS 5/2-615 (West 2014); *Heastie v. Roberts*, 226 Ill. 2d 515, 531 (2007). In determining whether a complaint is legally sufficient, a court must accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts. *Heastie*, 226 Ill. 2d at 531. The crucial inquiry in ruling upon a section 2-615 motion to dismiss is whether the allegations of the complaint, considered in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999) (*Bloomfield Club*). A cause of action should not be dismissed pursuant to section 2-615 unless it is clearly apparent that the plaintiff cannot prove any set of facts that will entitle the plaintiff to relief. *Heastie*, 226 Ill. 2d at 531. A trial court's ruling on a section 2-615 motion to dismiss is subject to a *de novo* standard of review on appeal. *Id.* at 530-31.

¶ 18    In the present case, to resolve this issue, we need only to determine whether the tax deed in question was void or voidable because Stolat's entire argument is dependent upon the premise that the tax deed was void. Unfortunately for Stolat, we do not agree with that premise. The trial court's subject-matter jurisdiction over all justiciable matters is conferred by the Illinois Constitution and cannot be negated or divested by the failure to satisfy a certain statutory requirement or prerequisite. See *People v. Castleberry*, 2015 IL 116916, ¶ 15; *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶¶ 27-40. Thus, any requirement to obtain the FDIC's consent to the sale of the delinquent taxes or to the issuance of a tax deed, assuming, for argument's sake, that such a requirement existed under the unique facts of this case, would not have served to

6

deprive or divest the trial court of subject-matter jurisdiction. See *Castleberry*, 2015 IL 116916, ¶ 15; *LVNV Funding, LLC*, 2015 IL 116129, ¶¶ 27-40. Therefore, even if we assume that the defect alleged by Stolat actually existed, the orders issued by the trial court in the underlying proceedings in this case, such as the order for tax sale and the order for issuance of tax deed, were voidable and not void. See *Castleberry*, 2015 IL 116916, ¶ 15; *LVNV Funding, LLC*, 2015 IL 116129, ¶¶ 27-40. It follows, then, that the tax deed itself was also not void.

¶ 19    Because the tax deed, at most, was voidable, rather than void, Stolat was required to comply with the requirements under section 2-1401 for setting aside a nonvoid order. Most notably in this case, Stolat had to establish due diligence. See *Sarkissian*, 201 Ill. 2d at 103-04. As the Varboncouers correctly note, however, Stolat did not and could not satisfy that requirement in its pleading because the Bank of New York, as trustee of the trust that held the Modla mortgage, was notified of the tax deed proceedings and did not appear or otherwise respond in those proceedings. Having failed to establish due diligence, Stolat failed to state a claim for relief under section 2-1401. See *In re Application of the County Treasurer & ex officio County Collector of Cook County*, 386 Ill. App. 3d 906, 910-11 (2008) (*Hammond*). In addition, Stolat's petition was also insufficient because Stolat failed to plead or establish any of the statutory grounds for setting aside a tax deed as provided for in section 22-45 of the Property Tax Code. See 35 ILCS 200/22-45 (West 2014); *Hammond*, 386 Ill. App. 3d at 911. The trial court, therefore, properly granted the Varboncouers' section 2-615 motion to dismiss the petition. See 735 ILCS 5/2-615 (West 2014); *Bloomfield Club*, 186 Ill. 2d at 424; *Heastie*, 226 Ill. 2d at 531.

¶ 20                                    II. The Trial Court's Grant of
                              Interstate's Section 2-619(a)(9) Motion to Dismiss

¶ 21    As its second point of contention on appeal, Stolat argues that the trial court erred in granting Interstate's section 2-619(a)(9) motion to dismiss the petition to set aside the tax deed.

7

Stolat asserts that Interstate's motion to dismiss should not have been granted because Interstate's grounds for dismissal—estoppel or waiver—were not a bar to Stolat's claim for relief since the tax deed at issue was void and could be challenged at any time. Thus, according to Stolat, it does not matter whether the Bank of New York had notice of the proceedings and failed to take steps to prevent entry of the tax deed or whether an attorney for the loan servicer was present in court during some of the proceedings. None of that, according to Stolat, prevents Stolat from challenging the tax deed because the tax deed was void and could be challenged at any time. For all of the reasons set forth, Stolat asks that we reverse the trial court's grant of Interstate's motion to dismiss and that we remand this case for further proceedings.

¶ 22    Interstate argues that the trial court's ruling was proper and should be upheld. Interstate asserts that the motion to dismiss was correctly granted because Stolat lacked the requisite due diligence to enable it proceed under section 2-1401 of the Code. More specifically, Interstate asserts that Stolat cannot show that it was free from fault or negligence in failing (through its predecessor) to bring the alleged defect (the failure to obtain the FDIC's consent) to the trial court's attention prior to the entry of the order for tax deed in the original proceedings or within 30 days thereafter. Rather, according to Interstate, Stolat (through its predecessor) sat on its rights and failed to make that defect known to the trial court, despite the fact that an attorney for the loan servicer appeared in court during the tax deed proceedings. According to Interstate, if Stolat (through its predecessor) believed that the trial court had lost subject-matter jurisdiction at some point during the original proceedings, Stolat (through its predecessor) was mandated by section 2-1401 to alert the trial court to that issue prior to the entry of the order for tax deed or within 30 days thereafter. For all of the reasons stated, Interstate asks that we affirm the trial court's grant of its section 2-619(a)(9) motion to dismiss the petition to set aside the tax deed.

8

¶ 23        Section 2-619 of the Code allows a litigant to obtain an involuntary dismissal of an action or claim based upon certain defects or defenses. See 735 ILCS 5/2-619 (West 2014). The statute's purpose is to provide litigants with a method for disposing of issues of law and easily proven issues of fact early in a case, often before discovery has been conducted. See *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 367 (2003); *Advocate Health & Hospitals Corp. v. Bank One, N.A.*, 348 Ill. App. 3d 755, 759 (2004). In a section 2-619 proceeding, the moving party admits the legal sufficiency of the complaint but asserts an affirmative defense or other matter to defeat the nonmoving party's claim. *Van Meter*, 207 Ill. 2d at 367. Section 2-619 lists several different grounds for which an involuntary dismissal may be granted. See 735 ILCS 5/2-619(a)(1) to (a)(9) (West 2014). Under subsection (a)(9), the subsection that applies in this case, a litigant may obtain an involuntary dismissal of a claim asserted against him if the claim is barred by other affirmative matter, which avoids the legal effect of or defeats the claim. 735 ILCS 5/2-619(a)(9) (West 2014). An "affirmative matter" is something in the nature of a defense that negates the cause of action completely. *Van Meter*, 207 Ill. 2d at 367. In ruling upon a section 2-619 motion to dismiss, the court must construe all of the pleadings and supporting documents in the light most favorable to the nonmoving party. *Id.* at 367-68. On appeal, a dismissal pursuant to section 2-619 is reviewed *de novo. Id.* at 368.

¶ 24        In the present case, as with the first issue, Stolat's argument on this second issue is entirely dependent upon the premise that the order for tax deed entered in the original proceedings was void because the trial court was divested of subject-matter jurisdiction due to the failure to obtain the FDIC's consent, as required by federal statute. As noted above, we do not agree with that premise. Assuming that the alleged defect truly existed, the orders for tax sale and tax deed in this case and the tax deed itself were voidable, not void. See *Castleberry*, 2015

9

IL 116916, ¶ 15; *LVNV Funding, LLC*, 2015 IL 116129, ¶¶ 27-40. Thus, Stolat's argument on this issue must be rejected, and it must be concluded that Stolat's failure (through its predecessor) to exercise due diligence in the original proceeding completely negated Stolat's claim for relief under section 2-1401. We find, therefore, that the trial court properly granted Interstate's section 2-619(a)(9) motion to dismiss the petition to set aside the tax deed to the subject property. See 735 ILCS 5/2-619(a)(9) (West 2014); *Van Meter*, 207 Ill. 2d at 367.

¶ 25    Because we have determined that the tax deed in this case was at most, voidable, rather than void, and that Stolat's arguments on this issue and the first issue must be rejected for that reason, we need not address the other assertions of the parties in support of their arguments on either of the two issues.

¶ 26                                    CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Will County.

¶ 28    Affirmed.

¶ 29    JUSTICE McDADE, dissenting.

¶ 30    I respectfully dissent from the majority's decision to affirm the order of the circuit court of Will County dismissing, with prejudice, the claims of petitioner, Stolat Financial, LLC. I do so with some uncertainty because I have driven myself beyond the bounds of frustration trying to parse the intricacies of the federal statute and related federal regulations, along with the current policy statement on the payment of state and local property taxes pertinent to this case. The reason for my dissent is my belief that the following factual disputes, which I would find material, preclude the dismissal.

¶ 31                        1. Did a Valid (Timely) Lien Attach to Property of the FDIC?

10

¶ 32    If, as asserted by the parties, the Modlas defaulted on their 2009 property taxes, the taxes would have been due and payable in 2010. The soonest there would be an actual default would be when the Modlas failed to pay the tax in September 2010. FDIC registered its appointment as receiver in the Federal Register on April 30, 2010, and was, therefore, the owner of a lien interest secured by the property prior to the Modlas' default. A mortgage lien interest held by the FDIC is property within the meaning of Section 15(b)(2) of the Federal Deposit Insurance Act, § 15(b)(2), 12 U.S.C. § 1825(b)(2) (2006). *Matagorda County v. Law*, 19 F.3d 215 (5th Cir. 1994). Thus, FDIC had a documented property interest in the Modlas' property at the time the taxes became delinquent. Section 15(b)(2) further provides that no involuntary lien can attach to the property of the FDIC. I am unsure if we know when the tax lien actually attached, if at all. It is for these reasons that I believe there is a material factual dispute as to whether the tax lien *ever* attached to the property interest owned by the FDIC at the time of the Modlas' tax default.

¶ 33    2. What Was the Property Interest Held by FDIC's Trustee at the Time of the Sale?

¶ 34    Title cannot pass on a tax sale until the end of the redemption period and the issuance of title. *In re Allegheny International Credit Corp.*, 128 B.R. 125, 127 (W.D. Pa. 1991). In this case, that occurred in January 2014. Prior to that date, however, in February 2013, FDIC's trustee foreclosed on the Modla mortgage and became the owner of the real property, rather than simply the mortgage or lien interest. To what interest did the tax lien attach?

¶ 35    3. Was FDIC's Consent Necessary to Foreclose Its Property Interest?

¶ 36    When FDIC created the trust and put the Modla mortgage in it, it retained an interest— not, as the majority correctly points out, because of any language in the trust agreement expressly reserving rights for FDIC in the trust *res*—but rather by operation of law.

11

¶ 37    According to the FDIC Statement of Policy Regarding the Payment of State and Local Property Taxes, 61 Fed. Reg. 65053, 65057-58 (Jan. 9, 1997):

> "No property of the Corporation is subject to levy, attachment, garnishment, foreclosure or sale without the Corporation's consent. Furthermore, a lien for taxes and interest may attach to property in which the Corporation has a lien or security interest, but the Corporation will not permit a lien or security interest held by it to be eliminated by foreclosure without the Corporation's consent."

¶ 38    Stolat has referred us to section 360.6 of Title 12 of the Code of Federal Regulations (12 C.F.R. § 360.6 (2011)), titled "Treatment of financial assets transferred in connection with a securitization or participation." That section appears to, *inter alia*, establish the relative interests of FDIC and its trustee in the properties assigned to the trust. Subsection (i) of that section provides:

> "No waiver. Except as specifically set forth herein, this section does not authorize, and shall not be construed as authorizing the waiver of the prohibitions in 12 U.S.C. 1825(b)(2) against levy, attachment, garnishment, foreclosure or sale of property of the FDIC, nor does it authorize nor shall it be construed as authorizing the attachment of any involuntary lien upon the property of the FDIC. Nor shall this section be construed as waiving, limiting or otherwise affecting the rights or powers of the FDIC to take any action or to exercise any power not specifically mentioned ***."12 C.F.R. § 360.6(i) (2011)

¶ 39	This section appears to preserve the prohibition against divestment of an interest previously held by FDIC without its consent. It may also explain why FDIC could assign its interest in the Modla property to Stolat despite the existence of the trust. It is for these reasons that I believe there is a material factual dispute as to whether the property could be sold without FDIC's consent.

¶ 40	I need to make two final points. First, I do not contend that the position taken by the circuit court will not ultimately prove to be the correct one. I only suggest the existence of factual disputes that indicate petitioner could possibly state a viable claim for relief and that dismissal with prejudice may be premature at this point. Second, the majority rested its decision in large measure in reliance on two cases—*People v. Castleberry*, 2015 IL 116916, and *LVNV Funding, LLC v. Trice*, 2015 IL 116129—that were not briefed by the parties and the use of which has precluded Stolat from presenting any alternate arguments grounded in federal law for the continued viability of its claim.