2015 IL App (1st) 131925

FIRST DIVISION
SEPTEMBER 30, 2015

No. 1-13-1925

| | | |
|---|---|---|
| THE FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS, a Body Corporate and Politic of the State of Illinois, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| CHICAGO TITLE AND TRUST COMPANY, an Illinois Corporation, as Successor Trustee of America Trust Company, as Trustee Under Trust Agreement Dated December 18, 1992, and Known as Trust Number 36-4033; and ALLEN HOGER, | ) ) ) ) ) ) | No. 00 L 50709 |
| Defendants-Appellees | ) ) | |
| (Manufacturers Bank, an Illinois Banking Corporation; Illinois Bell Telephone Company, an Illinois Corporation; and Unknown Owners, | ) ) ) ) | Honorable Eileen O'Neill-Burke, |
| Defendants). | ) | Judge Presiding. |

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Presiding Justice Liu and Justice Harris concurred in the judgment and opinion.

## OPINION

¶ 1     Plaintiff-appellant The Forest Preserve District of Cook County, Illinois (the District) appeals from an order of the circuit court of Cook County granting the defendants-appellees' petition pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2000)), which sought to vacate an agreed order and judgment entered in an eminent domain action.  For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                              BACKGROUND

¶ 3    The District commenced this eminent domain proceeding in 2000 to acquire land in unincorporated Orland Park, Illinois that was owned by the defendants-appellees, Chicago Title and Trust Company and Allen Hoger (the defendants). The District sought to acquire the property by condemnation pursuant to an ordinance that was purportedly passed several years earlier by the District's board of commissioners on May 20, 1991 (the "May 1991 ordinance"), authorizing the acquisition of land to connect two preexisting parcels of forest preserve.

¶ 4    The instant action against the defendants was one of multiple condemnation proceedings initiated by the District against various property owners premised on the May 1991 ordinance. However, trial courts in other cases subsequently concluded (in decisions later affirmed by our court in 2008) that the procedural requirements for the passage of the ordinance at the May 1991 board meeting were not met, and thus the ordinance was never enacted. As explained by our appellate court in an unpublished decision (the *Evergreen Park* decision) that consolidated appeals from two separate cases concerning the May 1991 ordinance: "The original record of the proceedings of the May 20, 1991 meeting of the District board included an ordinance enabling the acquisition of land for the forest preserve connection project, but that record did not show that the ordinance was formally introduced, read, discussed or submitted to an approval vote. That record instead shows *** that the acquisition ordinance was deferred." *Forest Preserve District v. First National Bank of Evergreen Park*, Nos. 1-04-1536, 1-04-3777 cons., slip order at 6 (2008), (unpublished order under Illinois Supreme Court Rule 23).

¶ 5    The District initiated the instant case by filing a condemnation complaint against the defendants on July 19, 2000, which cited the May 1991 ordinance as the basis for the District's authority to condemn the defendants' property. During discovery in the underlying action, the

defendants requested that the District produce records concerning its authority to bring the condemnation action. In response, the District produced an unsigned document purporting to be the May 1991 ordinance. According to the defendants, they relied on the District's statements and had no reason to doubt the validity of the May 1991 ordinance. Thus, the defendants did not file a traverse, motion to dismiss, or any other objection to the District's authority to bring the condemnation action.

¶ 6    The District and the defendants reached a settlement agreement under which the defendants agreed to accept $1.7 million as the total just compensation for their property. On March 6, 2003, the settlement was memorialized and approved by the trial court in an "Agreed Final Judgment Order" (the Agreed Order). The Agreed Order included a release provision stating that upon receipt of the specified compensation, the "owners of the property release the [District] *** from any and all claims or causes of action of any kind or character made or which could have been made in this action or any state or federal court, including any claim for compensation for the property *** and any and all known and unknown losses and damage relating to or arising from the taking of said property through eminent domain."

¶ 7    Meanwhile, certain other property owners in separate condemnation actions brought by the District raised challenges to the validity of the May 1991 ordinance. After such challenges, the District in May 2003 passed a new ordinance purporting to cure any procedural defects in the May 1991 ordinance. As noted in our court's subsequent *Evergreen Park* decision, the District's May 2003 ordinance "stated that the acquisition ordinance was in fact passed by the District's board at the May 20, 1991 meeting" and "purported to amend retroactively the record of the proceedings of that meeting to indicate that the acquisition ordinance had been passed by a unanimous vote." *Id.*

¶ 8       On November 19, 2003, the trial court presiding over separate condemnation cases brought by the District against other owners (consolidated cases Nos. 00 L 50990 and 00 L 50991) dismissed those cases due to the invalidity of the May 1991 ordinance.  The trial court presiding over those cases found that the ordinance was "never adopted," "not signed," and had not been put to a vote, concluding that since the ordinance was "not valid, the [District] cannot, as a matter of law condemn Defendants' property."  After the defendants in this case became aware of that decision, they sought to challenge the Agreed Order in their case.

¶ 9       In February 2004, the defendants filed their first section 2-1401 petition seeking to vacate the March 2003 Agreed Order, which alleged that the District's condemnation complaint had falsely represented that a valid ordinance authorizing condemnation of the property had been passed when in fact "[n]o such condemnation ordinance was considered, voted upon, or adopted."  The defendants alleged that, without the District's claims of a valid ordinance, the Agreed Order would not have been consented to by the defendants or the trial court.

¶ 10      On March 10, 2004, the District filed a motion to dismiss the section 2-1401 petition, relying primarily on the release language in the Agreed Order as a bar to a section 2-1401 petition.  The District otherwise argued that the defendants failed to allege sufficient facts to sustain a section 2-1401 petition, including a meritorious defense, due diligence in bringing the defense in the original action, and diligence in bringing the petition.  Specifically, the District argued that the defendants had failed to assert a traverse or other objection to challenge the District's authority prior to agreeing to settle the case.

¶ 11      On July 7, 2004, the court granted the District's motion to dismiss the original petition, but granted the defendants leave to file an amended petition, which was filed on August 10,

2004.[1]  On September 28, 2004, the District moved to dismiss the amended petition, again arguing that it was barred by the release language in the Agreed Order and that the defendants had failed to show due diligence because they had failed to file a traverse.

¶ 12   On February 10, 2005, the defendants filed a response to the motion to dismiss, contending that they should not be bound by the release contained in the Agreed Order since they had entered into that agreement under the mistaken belief that the District was empowered to condemn their property.  With respect to due diligence, the defendants urged that "the non-existence of an ordinance was withheld from them," that they had reasonably relied on the District's representations that a valid ordinance existed, and that they had filed their petition within a reasonable time after learning, through separate cases, that the ordinance was not valid.

¶ 13   On August 29, 2005, the court heard oral argument on the motion to dismiss the amended section 2-1401 petition, although no transcript of such argument appears in the record.  On November 22, 2005, the court granted, without prejudice, the District's motion to dismiss the amended section 2-1401 petition.  The trial court's written order noted that the court had "reviewed the briefs of the parties and the arguments of counsel," although the defendants' counsel apparently was not present at the November 22, 2005 hearing.  On December 12, 2005, the defendants moved to vacate the dismissal, claiming that their counsel had been unaware of the November 22, 2005 hearing.  On February 14, 2006, the District responded by filing a motion to strike the defendants' motion to vacate the dismissal.

---

[1]The actual amended petition does not appear in the record on appeal, but an order of the trial court reflects that on August 10, 2004, the defendants were granted leave to file that amended petition *instanter*.

¶ 14    On February 23, 2006, the trial court denied both the District's motion to strike as well as the defendants' motion to vacate the dismissal of the amended section 2-1401 petition. However—apparently in recognition of the fact that a challenge to the May 1991 ordinance was pending before our appellate court in separate cases—the trial court stayed enforcement of the dismissal order. For the next several years, there were no substantial proceedings in this case.

¶ 15    In August 2008, while this action was stayed, our appellate court issued its *Evergreen Park* order affirming the dismissal of two separate cases brought by the District pursuant to the May 1991 ordinance. See *Forest Preserve District v. First National Bank of Evergreen Park*, Nos. 1-04-1536, 1-04-3777 cons. (2008) (unpublished order under Illinois Supreme Court Rule 23). In that order, our court affirmed two trial court rulings that the District "could not acquire property by condemnation because its board did not complete a necessary prerequisite to the exercise of its eminent domain power: the enactment of a valid ordinance approving the acquisitions." *Id.* at 1.

¶ 16    The property owners in the two underlying cases had filed "a traverse and motion to dismiss, asserting that the District had not properly enacted an ordinance approving the acquisition of their properties and could not exercise the power of eminent domain without first doing so." *Id.* Our order noted that: "The parties agree that the district could not properly exercise its power to condemn unless it first passed an ordinance enabling the acquisitions." *Id.* at 5.

¶ 17    Our court in *Evergreen Park* reviewed the trial courts' findings of fact regarding the purported ordinance under the "manifest weight of the evidence standard." *Id.* at 4-5. Although the parties had "presented competing views" of the actions taken by the District, our court concluded that the record on appeal, including a videotape of the May 1991 board meeting,

"demonstrates that each trial court was correct in rejecting" the District's version of events. *Id.* at 7. In particular, "[t]he absence of the ordinance from the meeting agenda, the non-existence of a signed ordinance and the complete lack of mention of the ordinance on the videotape of the [District board] meeting all support the trial courts' findings that no ordinance was passed." *Id.* Our court concluded that the evidence "supported the conclusion that the District's board did not pass" the ordinance and affirmed the trial court rulings that the District could not acquire the property at issue in the underlying cases. *Id.* at 9.

¶ 18    Following our *Evergreen Park* decision, in October 2008 the defendants in this case sought a status hearing, asserting that "a related matter of potential precedential significance" had been decided by our appellate court. Over two years later, after numerous status conferences without substantive rulings, the defendants moved for leave to file a second amended section 2-1401 petition on December 9, 2010.

¶ 19    On September 8, 2011, the District filed an opposition to the defendants' motion for leave to file a second amended petition. As in its prior submissions, the District contended that the release language in the 2003 Agreed Order barred a section 2-1401 petition, and that the defendants could not establish due diligence because they had not raised any challenge to the May 1991 ordinance in the underlying action. Specifically, the District noted that although property owners in other cases had successfully filed a traverse or motion to dismiss challenging the May 1991 ordinance, the defendants in this case did not raise such a challenge before entering the Agreed Order.

¶ 20    On December 16, 2011, the defendants submitted a reply brief in which they contended that because the May 1991 ordinance had not been passed, the Agreed Order was "void as the court lacked subject matter jurisdiction." Alternatively, the defendants contended that the

Agreed Order was "voidable because the suit was commenced, and the order entered, based on fraudulent concealment [or] a mutual mistake of material fact." Regarding the release, the defendants argued that it "must fall with all the other provisions because the [Agreed] Order is void." The defendants also argued that release was invalid because the parties were either "mutually mistaken about the existence" of the May 1991 ordinance or that the District had intentionally misrepresented that the ordinance was valid. The defendants also urged that they could not have waived any challenge to the ordinance because they had lacked knowledge of its invalidity because they had relied on the District's representations that it was valid.

¶ 21 On December 22, 2011, the District filed a surreply, in which it disputed the contention that an invalid ordinance would deprive the trial court of jurisdiction. The District contended: "The failure of the condemning body to fully comply with the statutory requirements goes only to the exercise of the right of the condemnor to acquire property" but did not affect the court's jurisdiction.

¶ 22 On December 22, 2011, the court heard oral argument on the defendants' motion for leave to file a second amended section 2-1401 petition. The defendants' counsel argued that the requirements for a section 2-1401 petition, including a meritorious defense and due diligence by the defendants, were satisfied. The defendants argued that, prior to the March 2003 Agreed Order, the defendants had no way to know that the May 1991 ordinance had been invalid, particularly as they "relied upon [the District's] representations that they had the valid authority" to bring the action. The defendants thus argued that the settlement contained in the Agreed Order was "based upon either a mutual mistake or fraud."

¶ 23 The District's counsel responded that if a defendant suspects "some defect in the taking or in the authority of the District," "the remedy is to bring a traverse" or motion to dismiss, but the

defendants had failed to do so, resulting in a "clear waiver." The District acknowledged that, in response to discovery requests, the District had produced an unsigned document purporting to be a valid ordinance. However, the District contended that if the defendants had suspected that the document was defective, the defendants could have raised an objection instead of entering the Agreed Order.

¶ 24    Similarly, the District argued that the defendants' "lack of diligence" was demonstrated by the fact that, although property owners in other cases had filed a traverse challenging the ordinance and "asked for additional documentation," the defendants in this case did "nothing to follow-up" after the District produced the purported ordinance in discovery: "They were given a copy of the ordinance which they say was defective on its face, and they did nothing to challenge that" but "chose instead to settle the case." In response, the defendants' counsel urged that they had no reason to file such an objection, as they had relied on the District's representations that there was a valid ordinance. The defendants' counsel argued that "waiver requires knowledge" and the defendants "didn't know of any defect in the ordinance before the settlement agreement."

¶ 25    On February 15, 2012, the court issued a memorandum opinion and order granting the defendants' motion for leave to file a second amended section 2-1401 petition. Importantly, the trial court also addressed the merits of the second amended petition at that time, explaining: "although the Defendants' motion is merely seeking leave to file the petition to vacate under Section 2-1401, the parties have briefed this matter on the merits of the motion." The trial court proceeded to conclude that it had lacked subject matter jurisdiction when it entered the Agreed Order. Nonetheless, the court went on to hold that the defendants had satisfied the pleading requirements of a section 2-1401 petition and that the Agreed Order should be vacated.

¶ 26   The court first addressed whether it had subject matter jurisdiction when it entered the Agreed Order.   After noting that the "failure of the District to properly adopt the ordinance has been judicially determined" in our court's *Evergreen Park* decision, the court stated that the jurisdictional question was "whether the District in filing its complaint without having passed the requisite ordinance had *** presented the Court with a justiciable issue."   The court reasoned that since "the legislature can create new justiciable matters by enacting legislation," and "a condemnation action is a creature of statute," the failure to adopt the May 1991 ordinance "prevented the Court from being able to adjudicate this matter as it was impossible for the Court to grant the relief requested."   The court concluded that "as the District failed to enact the requisite ordinance, the court cannot grant the relief of the condemnation and therefore the court lacked subject matter jurisdiction."

¶ 27   The court's February 2012 order next addressed whether the defendants had complied with section 2-1401, recognizing that such a petition "must allege (1) a meritorious defense and (2) diligence in bringing the defense in the original action; and (3) diligence on the part of the petitioner in bringing the petition to vacate."   The court found that the "meritorious defense" requirement was fulfilled, because "the defense that no ordinance was enacted has been proven in a different matter," citing our court's 2008 *Evergreen Park* decision.

¶ 28   The court then addressed whether the defendants had failed to demonstrate due diligence. The court first rejected the District's argument that the defendants "failed to pursue the defense in the original action" because they "did not bring a traverse to test the authority of the District." The court reasoned that this argument "ignores the request of the Defendants, pursuant to *** discovery, requiring the District [to] produce the records supporting its authority to proceed with the condemnation" and "the District's response *** claiming that the District in fact did have

- 10 -

authority to proceed with the condemnation, when in fact it did not." The court remarked that the District "cannot benefit from its own misrepresentation."

¶ 29 The court similarly rejected the District's criticism of the defendants' timeliness in bringing the section 2-1401 petition. The court explained: "Given that the District initially asserted in a pleading that it had the requisite authority, responded in discovery that it had the requisite authority and subsequently tried to back-door authority for the taking by adopting another ordinance [in May 2003] to cure the lack of the requisite ordinance, any delay by the Defendants can be excused based upon their reliance on the District's misrepresentations."

¶ 30 Furthermore, the trial court accepted the defendants' additional argument that "the actions of the District in that it proceeded knowingly or with reckless disregard for the truth through pleadings and discovery to assert that it had passed a valid ordinance constitutes fraud" or that "at best this was a situation of mutual mistake." The court found that, "subsequent to the [Agreed Order], the Defendants learned that the requisite ordinance was not adopted." Criticizing the District's conduct, the court noted that the District "produced during discovery an unsigned document that was held out to be the valid basis of the action" and "then actively concealed the lack of the ordinance and tried to correct the situation by adopting a 'curative ordinance' " in May 2003. In granting the defendants' motion, the court remarked that "had the Court known that there was not a valid ordinance, the Court would not have entered judgment" and concluded that "mutual mistake or even active concealment requires that the Court vacate" the March 2003 Agreed Order.

¶ 31 On March 16, 2012, the District filed a motion to reconsider the February 2012 order. In its supporting memorandum, the District argued that the trial court had maintained subject matter jurisdiction "even if *** there was a defect in the District's exercise of its power of eminent

domain." The District also reiterated its argument that the defendants had "waived their right to challenge the authority of the District" by failing to file a traverse or motion to dismiss. On July 25, 2012, the court denied the District's motion to reconsider.

¶ 32 On January 4, 2013, the defendants filed their second amended section 2-1401 petition seeking to vacate the Agreed Order, which stated that the court had "already determined the merits" of the petition. On March 21, 2013, the District moved to dismiss the second amended section 2-1401 petition. The District again argued that a "challenge to an enabling ordinance in an eminent domain proceeding requires a traverse or motion to dismiss" and that the defendants had forfeited such a challenge.

¶ 33 The District's motion to dismiss the second amended petition also included factual contentions regarding the history of the May 1991 ordinance and the District board meeting at which it was purportedly passed. In support of the motion, the District submitted an affidavit of Herbert T. Schumann, Jr., who averred that he served as a commissioner of the District at the time of the May 20, 1991 board meeting. Schumann's affidavit stated that the ordinance at issue was placed on the District board's agenda as "Item #5" at the District's May 20, 1991 board meeting, that the board president "called for a vote on Item #5 and it was unanimously approved by the Board," and that this vote represented approval of the ordinance. Thus, according to the affidavit: "To the extent that the Journal of Proceedings of the [District] *** reflects any deferral of consideration of the Acquisition Ordinance, rather than its approval and passage, the Journal of Proceedings is in error." The District thus urged in its motion to dismiss that the May 1991 ordinance had been validly passed, but that an "unfortunate error" in the District's record of proceedings inaccurately reflected that the vote on the ordinance had not occurred.

¶ 34     The District also acknowledged that, after property owners in other cases challenged the validity of the May 1991 ordinance, in May 2003 it had approved a "curative ordinance" in order "to amend the Journal of Proceedings to bring it in to conformance with the actual action taken by the Board."  The District maintained that the 2003 "curative ordinance" was passed "only to correct the obvious errors in the Journal of Proceedings" and was not an attempt to pass the May 1991 ordinance retroactively.

¶ 35     The District's motion to dismiss also disputed the trial court's conclusion that it had lacked subject matter jurisdiction, contending that a valid ordinance is "not required to invest the Court with jurisdiction" over an eminent domain proceeding.  The District argued that "the Circuit Court has jurisdiction when a public body with the power of eminent domain files an eminent domain case," and that the District's statutory authority to condemn was set forth in its enabling statute, the Cook County Forest Preserve District Act.  See 70 ILCS 810/8 (West 2000).  The District argued that this statute established jurisdiction, regardless of whether the District had actually *complied* with that statute by enacting a supporting ordinance.  The District thus urged that "[f]ailure to properly pass an ordinance *** goes only to the authority of the condemnor to proceed with respect to a specific parcel, not to the jurisdiction of the Court."  Separately, to the extent the trial court had found that section 2-1401's due diligence requirements were met, the District urged that "the defenses of mutual mistake and fraud require discovery and an evidentiary hearing."

¶ 36     The District's motion to dismiss the second amended section 2-1401 petition concluded by requesting that the court find that it *did* have subject matter jurisdiction and hold an "evidentiary hearing on due diligence."  The District alternatively requested that, if the court

maintained its holding that it lacked jurisdiction, the second amended section 2-1401 petition must be dismissed for lack of jurisdiction but that the defendants could file a separate lawsuit.

¶ 37    On April 25, 2013, the defendants filed an opposition to the motion to dismiss which argued that there was "no genuine issue of fact *** that the District cannot establish authority to condemn" because no valid ordinance was passed.  The defendants argued that the District was "collaterally estopped from re-litigating the issue" since our appellate court's 2008 *Evergreen Park* order determined that the May 1991 ordinance was invalid.  Also on April 25, 2013, the defendants filed a "Motion for Summary Judgment" which made identical collateral estoppel arguments, and additionally sought leave to file a petition to recover attorney's fees.  On May 9, 2013, the trial court (a different judge than the judge who had issued the February 2012 order) entered and continued the defendants' motion for summary judgment.

¶ 38    On June 3, 2013, the trial court denied the District's motion to dismiss the second amended section 2-1401 petition.  In the same order, the trial court also proceeded to grant the relief sought by the second amended section 2-1401 petition, thus vacating the March 2003 Agreed Order.  The court stated that "the defendants' petition to vacate pursuant to section 2-1401 is appropriate and the court hereby vacates the Agreed Final Judgment Order entered in March 2003."  In the same June 3, 2013 order, the court instructed the District to respond to the defendants' separate motion for summary judgment and motion for leave to file a petition for legal fees.

¶ 39    On June 12, 2013, the District filed a notice of appeal from the June 3, 2013 order.  The trial court subsequently stayed further proceedings pending this appeal.

¶ 40                                    ANALYSIS

¶ 41    We first note that we have jurisdiction pursuant to Supreme Court Rule 304(b)(3), which allows appeals from "[a] judgment or order granting *** any of the relief prayed in a petition under section 2-1401 of the Code of Civil Procedure."  Ill. S. Ct. R. 304(b)(3) (eff. Jan. 1, 2006).

¶ 42    The parties dispute the applicable standard of review.  The District contends that the standard of review is *de novo*, whereas the defendants contend that the deferential "abuse of discretion" standard applies to review of an order granting a section 2-1401 petition.

¶ 43    Our supreme court has recently explained that "a section 2-1401 petition can present either a factual or legal challenge to a final judgment or order," and "the nature of the challenge presented in a section 2-1401 petition is critical because it dictates the proper standard of review on appeal."  *Warren County Soil & Water Conservation District v. Walters,* 2015 IL 117783, ¶ 31.

¶ 44    *Warren County* noted that the "seminal decision on section 2-1401 practice is *Smith v. Airoom, Inc.*, 114 Ill. 2d 209 (1986)."  *Id.* ¶ 36.  As explained by *Warren County*:  "*Airoom* established that to be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Id.* ¶ 37 (citing *Smith v. Airoom, Inc.*, 114 Ill. 2d at 209, 220-21 (1986)). "The question of whether relief should be granted lies within the sound discretion of the circuit court, depending on the facts and equities presented" and "a reviewing court will reverse the circuit court's ruling on the petition only if it constitutes an abuse of discretion."  *Id.* (citing *Airoom*, 114 Ill. 2d at 221).

¶ 45    Furthermore, our supreme court explained that although *Airoom* was a "fact-dependent challenge to a final judgment," a section 2-1401 petition "may also raise a legal challenge to a final judgment or order." *Id.* ¶¶ 40- 41.  *Warren County* noted that our supreme court's decision in *People v. Vincent*, 226 Ill. 2d 1 (2007), was "representative of a case involving a purely legal challenge to a final judgment under section 2-1401." *Warren County*, 2015 IL 117783, ¶ 42.  In *Vincent*, in that a criminal defendant alleged that his sentence of five consecutive 20-year prison terms was void, our supreme court held that the applicable standard of review was *de novo*. *Vincent*, 226 Ill. 2d at 15-18.  Moreover, *Vincent* did *not* require an analysis of the petitioner's due diligence as part of the applicable standard of review.  See *id.*

¶ 46    In *Warren County*, our supreme court clarified that "*Vincent* must be viewed in its narrow context of a section 2-1401 petition that raises a purely legal challenge to a judgment by alleging that it is void ***.  [Citation.]  When viewed in this context, our decision to apply *de novo* review is consistent with established principles of appellate review for cases involving purely legal questions." *Warren County*, 2015 IL 117783, ¶ 47.  Moreover, "a section 2-1401 petition seeking to vacate a void judgment, a purely legal issue, does not need to establish a meritorious defense or satisfy due diligence requirements" that otherwise must be met.  *Id.* ¶ 48.

¶ 47    Thus, the requirements for a successful section 2-401 petition, and the standard of review, differ depending on whether the petition seeks to vacate a "void" judgment.  In this case, it is not immediately apparent whether the section 2-1401 petition at issue is appropriately reviewed as a petition seeking relief from a "void" judgment, especially since the District disputes the trial court's determination that it lacked subject matter jurisdiction in the underlying action.

¶ 48    Thus, in order to assess the propriety of the section 2-1401 petition in this case, we must resolve whether this was a petition from a "void" judgment.  The question of "voidness," in turn,

requires us to determine whether the trial court had subject matter jurisdiction, as "whether a judgment is void or voidable presents a question of jurisdiction." *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 27. In *LVNV Funding*, our supreme court stated explicitly: "[W]hether a judgment is void in a civil lawsuit that does not involve an administrative tribunal or administrative review depends *solely* on whether the circuit court which entered the challenged judgment possessed jurisdiction over the parties and the subject matter." (Emphasis added.) *Id.* ¶ 32. Accordingly, to determine whether there was a "void" judgment, we consider whether the trial court had jurisdiction in the underlying eminent domain proceeding. Although the trial court concluded that it lacked subject matter jurisdiction, we review this legal conclusion *de novo*. See *McCormick v. Robertson*, 2015 IL 118230, ¶ 18.

¶ 49    The defendants' appellate brief maintain that, based on the invalidity of the May 20, 1991 ordinance, the trial court lacked subject matter jurisdiction, and so the Agreed Order was void.[2] On the other hand, the District urges that the trial court had subject matter jurisdiction in the eminent domain action, notwithstanding any failure to comply with the statutory requirement in the Cook County Forest Preserve District Act for a valid ordinance. See 70 ILCS 810/8 (West 2000).[3] The District urges that the trial court "confuse[d] a defense based upon lack of jurisdiction, with a defense based upon an invalid ordinance."

---

[2]Notably, although the defendants argue that the trial court lacked subject matter jurisdiction and that the Agreed Order was "void," they nevertheless proceed to argue that their petition satisfied the requirement of a meritorious defense and due diligence. However, if the Agreed Order was void, those section 2-1401 pleading requirements would be inapplicable.

[3]The District's briefing suggests that the Cook County Forest Preserve District Act "does not require the District to pass an ordinance prior to filing an eminent domain action." See 70 ILCS 810/8 (West 2000). However, as stated in our court's 2008 *Evergreen Park* decision, in prior cases concerning the validity of the same May 1991 ordinance, the District explicitly

¶ 50   We agree with the District that the trial court was mistaken in concluding that the lack of a valid ordinance deprived it of subject matter jurisdiction.  Although the trial court was correct in recognizing that the legislature can create new justiciable matters, precedent from our supreme court has explicitly rejected the proposition that a failure to comply with a statute precludes a circuit court from having subject matter jurisdiction.

¶ 51   "With the exception of the circuit court's power to review administrative action, which is conferred by statute, a circuit court's subject matter jurisdiction is conferred entirely by our state constitution."  *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 334 (2002).  Specifically, "[u]nder section 9 of article VI, that jurisdiction extends to all 'justiciable matters.' "  *Id.* (quoting Ill. Const. 1970, art. VI, § 9).  In *Belleville Toyota*, our supreme court rejected the suggestion "that the legislature, in defining a justiciable matter, may impose 'conditions precedent' to the court's exercise of jurisdiction that cannot be waived" as "contrary to article VI."  *Id.* at 335-36.  In a recent decision, our supreme court stated: "[W]hile the legislature can create new justiciable matters by enacting legislation that creates rights and duties, *the failure to comply with a statutory requirement or prerequisite does not negate the circuit court's subject matter jurisdiction* or constitute a nonwaivable condition precedent to the circuit courts' jurisdiction." (Emphasis added.)  *LVNV Funding*, 2015 IL 116129, ¶ 37.

¶ 52   Thus, if the District was statutorily required to pass an ordinance authorizing the acquisition of the property at issue, the failure to do so did not divest the circuit court of subject

---

agreed that it "could not properly exercise its power to condemn unless it first passed an ordinance enabling the acquisitions."  *Forest Preserve District v. First National Bank of Evergreen Park*, Nos. 1-04-1536, 1-04-3777 cons., slip order at 5 (2008) (unpublished order under Illinois Supreme Court Rule 23).  In that order, we affirmed the dismissal of two condemnation cases because the May 1991 ordinance had not been passed.  Thus, the District is estopped from now asserting that it did not need to pass a valid ordinance to support its condemnation action.

matter jurisdiction.  Although the failure to pass an ordinance meant that the *District* lacked authority to condemn the property, that is separate from whether the *court* lacked jurisdiction to hear the case.  In other words, the lack of a valid ordinance rendered the Agreed Order voidable, but not void.  See *id.* ¶ 27 ("If jurisdiction is lacking, any subsequent judgment of the court is rendered void ***.  [Citation.]  A voidable judgment, on the other hand, is an erroneous judgment entered by a court that possessed jurisdiction." (Internal quotation marks omitted.)).

¶ 53    As the trial court had subject matter jurisdiction, the March 2003 Agreed Order cannot be considered "void."  In turn, we do not review the section 2-1401 petition at issue in this appeal as a petition to vacate a "void judgment."  However, that conclusion does not resolve the question of whether the court properly granted the section 2-1401 petition.  Rather, our recognition that the Agreed Order was not a void judgment simply means that the section 2-1401 petition had to meet the usual requirements to vacate nonvoid judgments, including due diligence.

¶ 54    Before we assess those section 2-1401 requirements, however, we address the District's arguments that defendants' waiver, in addition to the release language within the Agreed Order, constitute independent bases for dismissing the section 2-1401 petition.  With respect to waiver, the District urges that "a defendant who wishes to contest the authority of the condemning body must preserve the objection by filing a traverse and/or a motion to dismiss" or "the objection is waived and cannot be brought subsequent to judgment being entered."  The District urges that "[t]his waiver is completely separate and apart from the issue of diligence" required to sustain a section 2-1401 petition.

¶ 55    The District cites several cases—none of which discuss a section 2-1401 petition—for the proposition that an objection to a condemning entity's authority is waived if not asserted through means of a traverse.  The most recent supreme court precedent relied upon by the District for its

waiver argument is the 1953 decision *Chicago Housing Authority v. Berkson*, 415 Ill. 159 (1953). In *Berkson*, the Chicago Housing Authority (CHA) brought a petition to condemn certain real estate owned by the defendants. *Id.* at 160. The parties proceeded to trial and the court entered judgment on the jury's verdict as to the value of the property. *Id.*

¶ 56 The defendants filed a motion to vacate the judgment, claiming that it was "void for lack of jurisdiction, and that certain facts existed which, if they had been made known to the trial court, would have precluded the entry of judgment." *Id.* Following the trial court's denial of the motion to vacate, the defendants contended on appeal that the CHA had "failed to obtain the approval of the governing body of the city of Chicago before acquiring private property for public purposes, as it was required to do, and that this failure deprived the trial court of jurisdiction to enter the condemnation judgment." *Id.* at 161.

¶ 57 The supreme court disagreed, finding that when the CHA had filed its amended petition to condemn, "there was no requirement that the governing body of the city approve the proposed land acquisitions of the [CHA]." *Id.* The supreme court recognized that, after the filing of the CHA's amended petition but before the entry of the condemnation judgment, the Housing Authorities Act had been amended to require a housing authority to obtain approval from the governing body of the municipality for the acquisition. *Id.* at 161 (quoting Ill. Rev. Stat. 1951, ch. 67½, ¶ 9). The *Berkson* defendants argued that "this amendment *** applies to condemnation proceedings instituted before but completed after the effective date of the amendment, and that the city's consent is a jurisdictional condition precedent to a condemnation award." *Id.*

¶ 58 The supreme court concluded that such an objection did not implicate jurisdiction and had been forfeited:

"[T]he objection was waived by failure to raise it at the appropriate time. The objection goes only to the right of the condemnor to acquire property by eminent domain. It does not affect the general jurisdiction of the court over the subject matter of an eminent domain action. It is settled that if a property owner wishes to contest the right of a condemnor to acquire his property by eminent domain, he is required to raise that issue before a jury is empaneled to determine the award. [Citations.] In the present case, the objection to the right of [CHA] to take the property, first asserted long after the judgment was entered, came too late." *Id.* at 161-62.

Thus, the supreme court affirmed the denial of the defendants' motion to vacate the judgment of condemnation. *Id.* at 165.

¶ 59 The District also cites to appellate court precedent indicating that a traverse is a proper method to challenge the condemning entity's authority. "A traverse, by definition, is a denial of a material allegation of fact." *Forest Preserve District of Du Page County v. Miller*, 339 Ill. App. 3d 244, 250 (2003). In *Miller*, our Second District held that: "It is well settled that a traverse is a proper method by which to object to a condemning entity's authority to condemn." *Id.* "When a complaint to condemn is traversed, the trial court may determine all questions raised regarding the condemnor's right to condemn the property." *Id.* Notably, however, *Miller* does not suggest that a traverse in the original proceeding is the *only* way to challenge the condemning entity's authority and does not mention a section 2-1401 petition.

¶ 60 The District similarly cites an earlier decision, also from our court's Second District, which held —although not in the context of a section 2-1401 petition — that "[a]n objection to a

condemnation proceeding is waived by the failure to raise it at the appropriate time during the eminent domain proceedings." *Towne v. Town of Libertyville*, 190 Ill. App. 3d 563, 568 (1989). The property owner in *Towne* had entered into a settlement agreement to sell his property to the condemning authority, but then brought a separate action pursuant to the federal Civil Rights Act of 1871 (42 U.S.C.A. §§ 1983, 1985(3) (West 1981)), alleging that he was "deprived of his property without due process of law and without just compensation." *Towne*, 190 Ill. App. 3d at 565. The Second District held that, as the property owner "failed to avail himself of the proper remedy to contest the propriety of the condemnation proceedings and instead elected to settle and compromise his claims," his "objections to the condemnation proceedings [were] waived, and he cannot now raise, in a collateral proceeding, issues which he could have properly raised in the eminent domain proceedings." *Id.* at 567.

¶ 61 The District urges that such authorities establish that "if a property owner fails to object to the right or authority of the condemnor to acquire property by eminent domain, the objection is waived." However, we find the cases cited by the District are distinguishable and do not preclude the section 2-1401 petition in this case. First, they do not concern a situation where the condemnation action was premised upon an ordinance whose invalidity has since been judicially determined. More importantly, the cases cited by the District fail to address the application of section 2-1401, or our supreme court's precedent emphasizing its broad application.

¶ 62 Our supreme court has made clear that section 2-1401 "provides a *comprehensive* statutory procedure by which final orders, judgments, and decrees may be vacated after 30 days from the entry thereof." (Emphasis added and internal quotation marks omitted.) *Airoom*, 114 Ill. 2d at 220. Our supreme court has also noted that: "In defining the relief available under [section 2-1401], the General Assembly used the broadest possible terms." *People v. Lawton*,

212 Ill. 2d 285, 297 (2004). "Although the statute is ordinarily used to correct errors of fact, nothing in the language of section 2-1401 limits its applicability to such matters" and "petitions filed under the statute may also be used to challenge judgments claimed to be defective for legal reasons." *Id*. (citing *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95 (2002)); see also *Warren County*, 2015 IL 117783, ¶ 41 (noting that a section 2-1401 petition "is not limited" to a factual challenge but "may also raise a legal challenge to a final judgment").

¶ 63    Our appellate court has likewise stated that "[t]he purpose underlying a section 2-1401 petition is to allow the petitioner to raise in the trial court facts that are absent from the record, but, if the facts had been known, the trial court would not have entered the judgment that it did in the underlying proceedings." *CitiMortgage, Inc. v. San Juan*, 2012 IL App (1st) 110626, ¶ 21. That is precisely the situation here; indeed, the trial court expressly found that, had it known that the May 1991 ordinance was invalid, it would not have entered the March 2003 Agreed Order.

¶ 64    Such precedent makes clear that section 2-1401 broadly contemplates relief from judgment based on mistakes of fact or legal defects. The District has cited no case law suggesting that section 2-1401 relief is unavailable when a condemnation judgment has been entered without proper authority—especially where, as here, the condemnor relied on an ordinance that has since been judicially held invalid. In light of the precedent emphasizing the broad scope of a section 2-1401 petition, we decline to carve out an eminent domain exception on the basis of case law that makes no mention of that procedural remedy. Thus, we reject the District's argument that the defendants forfeited any right to bring a section 2-1401 petition.

¶ 65    We similarly reject the District's contention that the release language contained in the Agreed Order independently warrants dismissal of the second amended section 2-1401 petition. The District argues that the Agreed Order "clearly releases or waives any additional claims that

the Defendants might have, including the Second Amended Petition to Vacate" and that the release "cover[s] any claim that there was any defect or deficiency in the District's condemnation Complaint or a lack of authority to bring the action." The District argues that Illinois courts have favored enforcement of settlement agreements and release, as a matter of public policy, and notes that where a defendant establishes the existence of a release, "the burden shifts to the plaintiff to prove it invalid by clear and convincing evidence." *Hurd v. Wildman, Harrold, Allen & Dixon*, 303 Ill. App. 3d 84, 89 (1999). The District argues that the second amended section 2-1401 petition "is devoid of any allegation regarding" the release in the Agreed Order and that the defendants "failed to produce clear and convincing evidence" that the release is not effective.

¶ 66 We find the District's argument unpersuasive for a simple reason: the release language that it relies upon as a bar to the section 2-1401 petition is *part of* the very judgment (the Agreed Order) that the defendants seek to vacate through the section 2-1401 petition. That is, the defendants' section 2-1401 petition is a collateral attack upon the release, along with the rest of the Agreed Order. The District is essentially arguing that a judgment containing a release of claims is insulated from attack through a section 2-1401 petition. Yet the District cites no authority that a release contained within a judgment precludes a section 2-1401 petition to seek relief from that judgment. To the contrary, this court has held that section 2-1401 petitions may be used to seek relief from settlement agreements. See *In re Marriage of Roepenack*, 2012 IL App (3d) 110198, ¶ 30 ("Relief under section 2-1401 may be available to set aside a settlement agreement that is unconscionable or was entered into because of duress, coercion or fraud."); see also *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131 (2001) (affirming order granting plaintiff's section 2-1401 petition and vacating dismissal of medical malpractice action pursuant

to settlement agreement, where plaintiff's attorney had entered into settlement without plaintiff's authorization).

¶ 67 Similarly, in this case, the defendants seek to vacate the Agreed Order (and the release therein) because it was premised, in part, on their mistaken belief based on the representation made by the District that a valid ordinance had been passed. Clearly, if the Agreed Order is invalid on that basis, then so is the release. We decline to accept the argument that a release *contained within a challenged judgment* insulates that same judgment from a section 2-1401 proceeding.[4]

¶ 68 We have rejected the District's arguments that the defendants' section 2-1401 petition was precluded by either the defendants' failure to assert a traverse prior to the Agreed Order, or by the release contained in that Agreed Order. Thus we turn to address whether the defendants otherwise fulfilled the requirements of a successful section 2-1401 petition.

¶ 69 First, we note that "[t]ypically, the [section 2-1401] petition must be filed more than 30 days from entry of the final judgment or order" that it seeks to vacate, "but not more than 2 years after that entry." *Warren County*, 2015 IL 117783, ¶ 31 (citing 735 ILCS 5/2-1401(a), (c) (West 2012)). The Agreed Order that is the subject of the second amended section 2-1401 petition was entered in March 2003. The defendants' original section 2-1401 petition challenging the Agreed Order was filed in February 2004. Although the second amended petition that is the subject of

---

[4]Moreover, we note that "general releases do not serve to release unknown claims, which the party could not have contemplated releasing when it gave the release." *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 21 (2003). As the trial court found, the Agreed Order (and release therein) was based upon, at best, mutual mistake regarding the lack of a valid ordinance. Thus, the lack of knowledge regarding the potential defense of an invalid ordinance takes it outside the scope of the release.

this appeal was not filed until January 2013, it relates back to the original, timely section 2-1401 petition, which was also premised on the invalidity of the May 1991 ordinance. See *Klose v. Mende*, 378 Ill. App. 3d 942, 952 (2008) ("Because the causes of action asserted in both the original and amended petitions grew out of the same transaction or occurrence and require the same proof, relation back was proper" and the "amended petition related back to the original petition which was timely filed \*\*\*."). Thus, the second amended section 2-1401petition was not barred by the two-year statute of limitations.

¶ 70 In addition, "to be entitled to relief from a final judgment or order under section 2-1401, the petition must set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Warren County*, 2015 IL 117783, ¶ 37 (citing *Airoom*, 114 Ill. 2d at 220-21). The trial court's February 2012 order recognized these requirements and found that they were satisfied; we review that determination under the deferential abuse of discretion standard. "This court will reverse the trial court's ruling on a section 2-1401 petition only where the trial court abused its discretion. [Citation.] A trial court abuses its discretion where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *CitiMortgage*, 2012 IL App (1st) 110626, ¶ 21. As explained below, we cannot say that the trial court abused its discretion in finding that the section 2-1401 requirements were satisfied.

¶ 71 First, we conclude that the requirement of a meritorious defense was clearly established, particularly since the invalidity of the May 1991 ordinance was judicially determined in a prior action. "A petitioner establishes a meritorious defense when he allege[s] facts that would have

prevented entry of the judgment if they had been known by the trial court." (Internal quotation marks omitted.) *Id.* Notably, the trial court here expressly found that, "had the Court known that there was not a valid ordinance, the Court would not have entered" the Agreed Order. In light of the application of collateral estoppel arising from our 2008 *Evergreen Park* decision, we certainly cannot say that the finding of a meritorious defense was an abuse of discretion.

¶ 72    As explained by our supreme court:  "The doctrine of collateral estoppel applies when a party *** participates in two separate and consecutive cases arising on different causes of action and some controlling fact or question *** has been adjudicated against that party in the former suit ***. The adjudication of the fact or question in the first cause will, if properly presented, be conclusive of the same question in the later suit ***." *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 389-90 (2001).  "The minimum threshold requirements for the application of collateral estoppel are: (1) the issue decided in the prior adjudication is *identical* with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." (Emphasis in original.) *Id.* at 390. Collateral estoppel may apply both to prior findings of fact and prior determinations of law. See *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 79 (2001).

¶ 73    Notwithstanding the District's efforts in this case to explain that its records of the May 20, 1991 board meeting were inaccurate, and that its board had in fact approved the May 1991 ordinance, operation of collateral estoppel clearly established the invalidity of the ordinance. The District had litigated and lost that identical issue in the two separate actions leading to our court's 2008 *Evergreen Park* decision, which affirmed the dismissals of those cases on the basis that the ordinance had never been passed. That decision was a final judgment on the merits

conclusively determining the identical issue against the same party in this case (the District). Thus, as the trial court in this case recognized, "the defense that no ordinance was enacted [was] proven" as a result of the *Evergreen Park* decision, and the District was precluded from relitigating the validity of the May 1991 ordinance in this case.

¶ 74 We next turn to the due diligence requirements of a section 2-1401 petition. With respect to whether the defendants demonstrated "due diligence in presenting this defense or claim to the circuit court in the original action" (*Warren County*, 2015 IL 117783, ¶ 37), the District urges that such lack of due diligence was established by the defendants' failure to raise a traverse or other objection challenging the District's authority to condemn. However, we cannot say that it was unreasonable or an abuse of discretion for the trial court to conclude that any such failure to raise an objection was excused, in light of the misleading representations by the District regarding the validity of the May 1991 ordinance. As the trial court's February 2012 order explained, the District's argument that the defendants failed to show due diligence is undermined on at least two bases, first, by the fact that the defendants made a discovery request that the District "produce the records supporting its authority to proceed with the condemnation"; and second, by the District's response "claiming that the District in fact did have authority to proceed with the condemnation, when in fact it did not."

¶ 75 On appeal, the District acknowledges that its complaint relied on the May 1991 ordinance and that it provided a copy of the purported ordinance to the defendants in discovery. The District nonetheless contends that the burden remained on the defendants to conduct further discovery or raise an objection. The District argues that "after having been provided with the unsigned, and therefore, allegedly defective, Ordinance, even though they were tipped off to a

possible problem because it was unsigned, [the defendants] did nothing to challenge [the District's] authority or to investigate the validity of the Ordinance."

¶ 76     Keeping in mind that "whether relief should be granted lies within the sound discretion of the circuit court, depending on the facts and equities presented," (*id.*) we cannot say that the trial court was unreasonable in concluding that the defendants satisfied due diligence under these circumstances.   Especially considering the unique equities presented when private property owners are faced with an eminent domain lawsuit brought by a governmental entity, the trial court could conclude that such property owners could rely on the condemning entity's explicit statements that the condemnation was based upon a valid ordinance.   Notwithstanding the District's arguments that its responses should have "tipped off" the defendants of possible defects in the May 1991 ordinance, the trial court could and did reasonably conclude that the defendants were not obligated to undertake further investigation in order to satisfy due diligence.

¶ 77     Similarly, we also find no abuse of discretion with respect to the trial court's finding that the defendants satisfied the additional requirement of "due diligence in filing the section 2-1401 petition for relief."  *Id.*   In this case, the original section 2-1401 petition was filed in February 2004, just under a year after the March 2003 Agreed Order.   In finding that the defendants had satisfied this due diligence requirement, the trial court's February 2012 order found that "subsequent to the entry of the [Agreed Order] the Defendants learned that the requisite ordinance was not adopted *** as alleged by the District in its Complaint" and as represented by the District in its discovery responses.   The trial court specifically found that there had been "mutual mistake or even active concealment" by the District regarding the invalidity of the May 1991 ordinance.  The record clearly supports the trial court's finding on this point.

¶ 78   The District on appeal urges that "fraud and mutual mistake do not justify [the defendants'] lack of diligence," as "there was no reason why [the defendants] could not have taken further discovery and/or challenged the taking by traverse just as the defendants in other cases involving the same ordinance" had done.  The District's argument is, essentially, that since other property owners were able to discover the invalidity of the May 1991 ordinance, notwithstanding the District's clear misrepresentation of the validity of the ordinance, it argues that the defendants in this case must not have exercised due diligence or they would have discovered the misrepresentation.  However, as our supreme court has instructed, the trial court "may also consider equitable considerations to relax the applicable due diligence standards under the appropriate limited circumstances," (*id.* ¶ 51), and we cannot say that the trial court was unreasonable in concluding that either mutual mistake or fraud justified any delay by the defendants in bringing the section 2-1401 petition in this case.  The trial court had many factors to consider in determining the equities in this case.  For example, at one point the court noted the District's attempt in 2003 to effect a retroactive enactment of the May 1991 ordinance.  It was reasonable for the court to conclude that the District's actions were suggestive of malfeasance, in that its actions could reasonably lead to the inference that the District *knew* that it did not have a valid ordinance.

¶ 79   Finally, we address the District's separate procedural arguments that the trial court should not have made any findings as to due diligence or granted the second amended section 2-1401 petition without allowing discovery or conducting an evidentiary hearing.  The District emphasizes "the unusual procedural chronology of this case," noting that the trial court's June 2013 order not only denied the District's motion to dismiss the second amended section 2-1401

petition, but also granted the principal relief sought by vacating the Agreed Order, "without allowing the District to file an answer *** or take discovery on the merits of the petition."

¶ 80     The District urges that since it had not filed an answer to the second amended petition, "the trial court could not have been aware of what facts were controverted or at issue."  The District contends that an evidentiary hearing is required whenever there is a disputed issue of fact, and that the defendants' allegations of mutual mistake and fraud necessitated discovery and a hearing.

¶ 81     We acknowledge that the procedural posture of this case is complex and unusual. Specifically, the February 2012 order upon the defendants' motion for leave to file a second amended petition not only granted that motion, but proceeded to address the merits of the section 2-1401 petition, including findings of a meritorious defense and due diligence.  Similarly, the June 2013 order not only denied the District's motion to dismiss the second amended petition, but granted the relief sought by that petition by vacating the Agreed Order.  Thus, the District is correct that it did not have the opportunity to file an answer to the second amended petition, and that there was no discovery or formal evidentiary hearing before the court granted the relief sought in the petition.

¶ 82     However, when viewing the record as a whole and the undisputed facts, we do not find that the court erred in failing to conduct further proceedings before vacating the 2003 Agreed Order.  First, as the trial court explained in its February 2012 order, the parties had already "briefed this matter on the merits ***, not merely the incidence of whether such a petition should be filed."  It is clear from the record on appeal that the parties' numerous filings with respect to the original petition, the amended petition, and the motion for leave to file the second amended petition had thoroughly addressed the merits of the petition and the District's defenses thereto.

That is, the District had already briefed the same arguments against granting the petition that it relied on in subsequent briefing in the trial court and that it now relies on in this appeal. No new arguments or facts have come to light. Specifically, the District had already briefed its two primary arguments that a section 2-1401 petition was barred because (1) the defendants had forfeited any challenge to the May 1991 ordinance, and (2) that the release language in the Agreed Order barred any section 2-1401 petition. In addition, the merits of the second amended petition, including the parties' arguments as to due diligence, had been argued by counsel at the December 2011 hearing on the motion for leave to file the second amended petition.

¶ 83    Moreover, although the District urges that an evidentiary hearing was required to decide issues of fact, there were actually no material issues of fact that needed to be decided. First, as discussed above, operation of collateral estoppel precluded the District from relitigating the issue of whether the May 1991 ordinance had been enacted. The District had already litigated and lost that issue in separate cases. Thus, although the District sought to prove in this case that the ordinance was in fact passed at the May 1991 board meeting, it was estopped from doing so. Thus, the crux of the defendants' section 2-1401 petition—the invalidity of the May 1991 ordinance—was already conclusively established.

¶ 84    Similarly, although no evidentiary hearing was held to assess the defendants' due diligence, the material facts underlying the trial court's conclusions that due diligence was satisfied by mutual mistake or fraud, were uncontroverted. The District could not dispute that its condemnation complaint explicitly pleaded that the condemnation action was authorized by the May 1991 ordinance. In addition, the District had conceded that, in response to the defendants' discovery requests, it had produced a copy of the purported May 1991 ordinance which it held out as having been validly enacted. Regardless of whether the District *intentionally*

misrepresented the validity of the ordinance, in light of the collateral estoppel effect of our 2008 *Evergreen Park* decision, the May 1991 ordinance was unquestionably invalid. In turn, whether through mistake or otherwise, the District falsely represented to the defendants that the ordinance was valid. Similarly, the Agreed Order was entered with the defendants believing that the condemnation was based on a valid ordinance.

¶ 85    Moreover, our supreme court has indicated that, although an evidentiary hearing is usually required to resolve issues of fact, whether to hold a hearing is also subject to the trial court's equitable discretion. In the course of describing the deferential "abuse of discretion" standard of review applied to the trial court's decision on a section 2-1401 petition, our supreme court stated that: "[W]hen the facts supporting the section 2-1401 petition are challenged by the respondent, a full and fair evidentiary hearing should be held. [Citation.] Relevant to this appeal, the trial court may also consider equitable considerations to relax the applicable due diligence standards under the appropriate limited circumstances." *Warren County*, 2015 IL 117783, ¶ 51. We interpret this language to mean that although disputed issues of facts will generally necessitate an evidentiary hearing, the trial court may, in its equitable discretion, determine that no such hearing is required to decide whether due diligence has been satisfied.

¶ 86    We decline to find that the trial court abused such discretion by failing to hold an evidentiary hearing, considering the unique equitable circumstances of this case and the extensive volume of information and facts available to the trial court throughout the proceedings. In particular, the invalidity of the May 1991 ordinance, upon which the entire condemnation action was premised, had been established as a matter of collateral estoppel. In turn, there could be no dispute that the District had explicitly relied on an invalid ordinance in its pleadings and discovery responses. The trial court could thus find that the meritorious defense of an invalid

ordinance was established, and that the defendants' due diligence requirements were satisfied, whether through "active concealment" or "mutual mistake" regarding the validity of the May 1991 ordinance. Thus, we decline to find error with respect to the procedure by which the trial court granted the second amended section 2-1401 petition and vacated the March 2003 Agreed Order.

¶ 87     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 88     Affirmed.