2020 IL App (1st) 191527-U
November 20, 2020

SIXTH DIVISION

No. 1-19-1527

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE FOREST PRESERVE DISTRICT OF COOK COUNTY, ILLINOIS, a body corporate and politic of the State of Illinois, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Law Division. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 16 L 50357 |
| CHICAGO TITLE AND TRUST COMPANY, an Illinois Corporation, AS SUCCESSOR TRUSTEE OF AMERICA TRUST COMPANY, AS TRUSTEE UNDER TRUST AGREEMENT DATED DECEMBER 18, 1992, AND KNOWN AS TRUST NUMBER 36-4033; and ALLEN HOGER, | ) ) ) ) ) ) ) ) | |
| Defendants-Appellees | ) ) | |
| (Manufacturers Bank, an Illinois Banking Corporation; Illinois Bell Telephone, an Illinois Corporation; and Unknown Owners, | ) ) ) ) | |
| Defendants). | ) ) ) | Honorable Michael F. Otto, Judge Presiding. |

JUSTICE GRIFFIN delivered the judgment of the court.
Presiding Justice Mikva and Justice Connors concurred in the judgment.

**ORDER**

¶ 1     *Held*: The judgment of the Circuit Court of Cook County is affirmed. Fundamental unfairness would not result from the application of *res judicata* to this case.

¶ 2     Plaintiff Forest Preserve District of Cook County, Illinois (District), attempted to pass an ordinance in 1991, that would give it authority to negotiate and take by eminent domain private property situated between two forest preserves in unincorporated Cook County. For years the District used the ordinance to take private property until a landowner moved to dismiss condemnation proceedings brought by the District on the basis that the ordinance was never passed in 1991, and the District was therefore acting without enabling authority. Two trial courts agreed that the ordinance was invalid and dismissed the condemnation proceedings.

¶ 3     By that time, defendant Allen Hoger and his wife (Hoger) had already settled with the District and sold their land. Hoger was the beneficiary of a land trust, which held title to his property. The successor trustee was Chicago Title and Trust Company. After the trial court invalidated the ordinance, Hoger returned to court to undo the settlement, arguing that the trial court never would have entered judgment had it known the ordinance was invalid. The District relentlessly opposed Hoger's claim for relief, as it did in each proceeding where a private landowner raised the defense of an invalid enabling ordinance.

¶ 4     Litigation ensued and continued for several years until the parties had briefed the same issue so many times that the trial court—citing this Court's decision to affirm the judgments which invalidated the ordinance—allowed Hoger to file a second amended petition pursuant to section 2-1401 of the Code of Procedure (735 ILCS 5/2-1401 (West 2008)). In addition to granting leave to file, the trial court in a written order addressed the merits of the petition and found that, even though an evidentiary hearing on due diligence was not held, Hoger had satisfied the requirements of section 2-1401. Hoger's petition was later granted and the District appealed.

¶ 5     We affirmed the judgment of the trial court on appeal, finding in part that the equities

favored relaxing the requirement of an evidentiary hearing on the issue of Hoger's due diligence. We concluded that, even if Hoger had knowledge of the potential invalidity of the ordinance, he nevertheless was entitled to rely on the myriad misrepresentations made by the District that it in fact had enabling authority when it in fact did not. We also found support in the record for trial court's finding that the District actively concealed the invalidity of the ordinance such that the vacation of the judgment approving the settlement agreement was warranted.

¶ 6    After the case returned to the trial court, the District filed its own section 2-1401 petition, claiming that newly discovered evidence showed that Hoger had actual knowledge of the ordinance's invalidity before he settled. The District maintained that, had the trial court known of this fact, it would not have entered judgment vacating its approval of the settlement agreement.

¶ 7    On a motion for summary judgment, the trial court found that the District was attempting to relitigate the issue of Hoger's due diligence, which had been resolved on appeal, and determined that Hoger's potential knowledge of potential defense to the invalidity of the ordinance was either considered irrelevant based on the finding that he was entitled to rely on the District's misrepresentations that it possessed the authority to condemn. The trial court granted summary judgment in favor of Hoger and against the District. The District timely appealed. For the following reasons, we affirm.

¶ 8                                    BACKGROUND

¶ 9    In the early 1990's, the District implemented a plan to acquire 285 acres of private land situated between the Tampier Lake and McGinnis Slough Forest Preserves in unincorporated Cook County. The land would serve to connect the two forest preserves and create a "greenway" between them. On March 20, 1991, to facilitate its acquisition of the land, the District attempted to adopt an ordinance authorizing it to take the privately-owned parcels by eminent domain (Ordinance).

The District divided the parcels, assigned them numbers between 1 and 23, and moved forward to complete the "Tampier Lake Greenway Project" (Project) through negotiation or condemnation.

¶ 10    For more than a decade the District used the Ordinance to complete the Project. In the early 2000's, however, the Project faced a setback. Courts invalidated the procedure by which the Ordinance was passed, describing it as so fatally flawed that Ordinance never came into existence. Along with the validity of the Ordinance went the legal authority it provided the District to negotiate and take private property for the Project. A rush to court ensued and the private landowners who had settled with the District took action to undo their settlement agreements.

¶ 11    One such landowner was Hoger, who settled with the District in May 2003, and sold his 14.6-acre property located at 11441 West 135th Street in unincorporated Orland Township (Property) for a total of 1.7 million. In 2004, Hoger petitioned the trial court to vacate its judgment on the basis that it never would have approved the settlement had it known the Ordinance was invalid. After we affirmed the invalidity of the Ordinance in a consolidated appeal, the trial court granted the requested relief and vacated its judgment. The District appealed, and we affirmed. Our Supreme Court denied leave to appeal and a mandate issued.

¶ 12    The proceedings resumed in the trial court and the District claimed to have unearthed new evidence that would warrant the reinstatement of the settlement agreement. According to the District, newly discovered evidence showed that Hoger had "actual knowledge" of the Ordinance's invalidity when he settled and had the trial court been aware of this "fact," it never would have entered judgment to vacate its prior approval of the settlement.

¶ 13    The trial court rejected the District's request for relief, finding that it was attempting to relitigate an issue that had been resolved on appeal. The District the "agreed" that the relitigation was precluded, but moved the trial court to reconsider because it was not afforded a "full and fair"

opportunity in the prior proceeding to establish the fact of Hoger's knowledge in an evidentiary hearing. The trial court declined to reconsider its decision. The District filed the instant appeal. Having set the stage in this procedurally complex case, we now go into more detail.

¶ 14    In the late 1990's, the Project met opposition in a citizen's group called the "Concerned Property Owners of Unincorporated Orland Township." The members of the group, who owned property south of 135th Street in unincorporated Orland Township, actively lobbied public officials to exclude their property from the Project. Among the group members was Hoger, who lived with his family and operated a horse farm business on a property designated by the District as "Parcel 4." Dan Shaeffer and Lorraine Kelly (Shaeffer and Kelly), who were also part of the group, owned "Parcel 16." After negotiations with Hoger, and Shaeffer and Kelly broke down, the District instituted condemnation proceedings against them.

¶ 15    On July 18, 2000, the District filed a complaint for condemnation against Hoger in the Circuit Court of Cook County. In paragraphs 5 and 7 of the complaint, the District expressly referenced the Ordinance as the legal basis for its authority to negotiate with the private landowners and condemn their property ("[t]he Board of Commissioners of the District, on May 20, 1991, adopted an ordinance authorizing the Real Estate Agent and Chief Attorney to negotiate, on behalf of the District, with the owner or owners" and "[t]he District, pursuant to the ordinance of May 20, 1991, referred to above, is authorized to acquire for the purposes aforesaid, the fee simple title to or such lesser interest as may be desired in and to the lands").

¶ 16    During the discovery process, Hoger asked the District to produce the documents supporting its authority to institute proceedings. In response, on October 3, 2001, the District produced an unsigned copy of the Ordinance. At no point during the proceeding did Hoger file a traverse, which challenges a public body's authority to take private property, or otherwise

challenge the validity of the Ordinance.

¶ 17    Hoger eventually settled with the District, signed a general release and sold his Property for 1.7 million. On March 6, 2003, the settlement was memorialized and approved by the trial court in an "Agreed Final Judgment Order" (Agreed Order). Shaeffer and Kelly, however, refused to settle with the District and filed a traverse.

¶ 18    After Shaeffer and Kelly laid out their arguments in the trial court, the Chief Counsel of the District analyzed them and concluded that a "curative" ordinance was in order. According to the Chief Counsel, the new ordinance would bring the proceedings into "conformity with the actual action taken." In other words, the Chief Counsel took the position that the Ordinance had been properly passed and the new ordinance would conform the proceedings to reality. The Board of Commissioners of the District passed the purported "curative" ordinance in May 2003.

¶ 19    In November of 2003, a trial court presiding over a case filed by the District against private landowners Gallagher and Henry invalidated the Ordinance on the basis that it was never signed, adopted, or even put to a vote. The trial court then dismissed the District's case, concluding that, absent an enabling ordinance, the District could not as a matter of law take Gallagher and Henry's property. Gallagher and Henry prevailed in another case on the same basis, and on April 19, 2004, the case against Shaeffer and Kelly was also dismissed.

¶ 20    The District appealed the decisions to dismiss, and years later, in 2008, we affirmed the judgments. See *Forest Preserve District v. First National Bank of Evergreen Park*, No. 1-04-1536, 1-04-3777 cons., slip order at 6 (2008) (unpublished order under Illinois Supreme Court Rule 23) (*Evergreen Park*). The following took place in the interim, before we decided the appeal.

¶ 21    After the Ordinance was invalidated for the first time in the trial court, Hoger sought to vacate the Agreed Order pursuant to section 2-1401 of the Illinois Code of Civil Procedure (735

ILCS 5/2-1401(a) (West 2004)), which allows a party to seek relief from a final judgment more than 30 days after its entry. In the petition, Hoger claimed that the trial court would not have entered judgment to approve the settlement agreement had it known the Ordinance was invalid. In a supporting affidavit, Hoger stated that the District represented the Ordinance as valid and duly enacted on May 20, 1991, that he relied on those representations when he settled and that he first learned the Ordinance was never passed when the trial court dismissed the Gallagher and Henry proceeding.

¶ 22    The District moved to dismiss the Hoger's petition, arguing that he lacked a meritorious defense and failed to exercise due diligence in both presenting the defense in the original action and in filing the petition. With respect to a meritorious defense, the District argued that Hoger released the claim when he agreed to settle. Regarding due diligence, the District contended that Hoger's failure to file a traverse or move to dismiss the proceedings was fatal. The trial court dismissed Hoger's section 2-1401 petition without prejudice on July 7, 2004, and granted him leave to amend. Hoger filed an amended 2-1401 petition and the District moved to dismiss it, raising the same arguments. The trial court dismissed the amended section 2-1401 petition without prejudice on November 22, 2005. The trial court then stayed the case pending the appellate proceeding in *Evergreen Park*, which would be determinative of the invalidity of the ordinance.

¶ 23    On August 11, 2008, we entered our decision in *Evergreen Park* and affirmed the trial courts' decisions to dismiss the eminent domain cases filed against Shaeffer and Kelly, and Gallagher and Henry. We found in part that:

> "[t]he original record of the proceedings of the May 20, 1991, meeting of the District board included an ordinance enabling the acquisition of the land for the forest connection project, but that record did not show that the ordinance was formally introduce, read, discussed or

7

submitted to an approval vote." *Id*. at 6.

¶ 24 Unpersuaded by the District's attempt to cure these glaring procedural defects, we described the "curative" ordinance as "purport[ing] to amend retroactively the record of the proceedings of the [Board meeting] to indicate that the acquisition ordinance had been passed by a unanimous vote." *Id*. We concluded that "the District's board did not pass the subject acquisition ordinance at the May 1991 meeting" (*id*. at 9) and the District "could not acquire property by condemnation because its board did not complete a necessary prerequisite to the exercise of its eminent domain power: the enactment of a valid ordinance approving the acquisitions" (*id*. at 1).

¶ 25 Following our decision, Hoger sought leave to file a second amended section 2-1401 petition on December 9, 2010. The District opposed the request. Hoger argued that he had no way of actually knowing the Ordinance was invalid prior to settlement and explained that he had "relied upon [the District's] representations that they had valid authority" to take his Property by eminent domain. Hoger asked the trial court to vacate its judgment on the basis of fraud on the part of the District or mutual mistake of the parties.

¶ 26 The District opposed leave to file and raised the same arguments it had all along—that Hoger released his claims and "waived" his right to challenge the District's enabling authority when he failed to file a traverse. Though the District acknowledged that it had produced an unsigned document purporting to be a valid enabling ordinance in discovery, it maintained that the focus was Hoger's failure to challenge the District's representations, not the representations themselves.

¶ 27 On February 15, 2012, the trial court entered a written order granting Hoger's leave to file a second amended 2-1401 petition. In the same order, the trial court noted that the parties had briefed the petition on the merits and addressed them, finding that Hoger had satisfied all the

requirements of section 2-1401 and that the judgment approving the settlement agreement should be vacated. The trial court referenced *Evergreen Park* as having decided the issue of the Ordinance's invalidity and thus, Hoger's defense was meritorious.

¶ 28    The trial court also found that Hoger exercised due diligence in presenting the defense in the original action and noted that the District's arguments in opposition seemed to ignore the (1) "requests of Defendants, pursuant to the Supreme court Rules of discovery, requiring the District to produce the records supporting authority to proceed with the condemnation," and (2) the "District's response to valid inquiry claiming that the District in fact did have the authority to proceed with the condemnation, when it in fact did not." The trial court tersely remarked that "[t]he District cannot benefit from its own misrepresentation."

¶ 29    The trial court further found that Hoger exercised due diligence in filing the section 2-1401 petition and characterized the District's counterarguments as "specious." The trial court reasoned as follows:

"Given that the District initially asserted in a pleading that it had the requisite authority, responded in discovery that it had the requisite authority and subsequently tried to back-door authority for the taking by adopting another ordinance to cure the lack of the requisite ordinance, any delay by the Defendants can be excused based upon their reliance on the District's misrepresentations."

The trial court determined that the District "actively concealed the lack of the ordinance" and it ultimately concluded that the relief requested by Hoger was warranted. The trial court declined to reconsider its decision.

¶ 30    On January 4, 2013, Hoger filed his second amended 2-1401 petition and argued that the trial court had "already determined the merits." Undeterred by the trial court's findings in the

9

written order granting Hoger leave to file, the District moved to dismiss the petition, arguing, yet again, that Hoger failed to file a traverse or a motion to dismiss and thereby "waived" his challenges to the Ordinance. Despite having lost the issue on the issue of the Ordinance's validity in the trial courts and on appeal, the District set forth "facts" in its motion purporting to show that the Ordinance was in fact valid and that an "unfortunate error" in the District's record of the proceedings inaccurately reflected that the vote on the ordinance had not occurred.

¶ 31    On June 3, 2013, the trial court denied the District's motion to dismiss. In the same order, the trial court granted the second amended section 2-1401 petition and vacated the Agreed Order. The District appealed the trial court's judgment. See *The Forest Preserve District of Cook County, Illinois v. Chicago Title and Trust Co.*, 2015 IL App (1st) 131925 (*Forest Preserve District*).

¶ 32    On appeal before this Court, the District claimed the trial court committed reversible error when it found that Hoger satisfied the due diligence requirements of section 2-1401. We considered that argument "in light of misleading representations by the District regarding the validity of the May 1991 ordinance" and rejected it, finding that the District's position was "undermined" on at least two separate bases. *Forest Preserve District*, 2015 IL App (1st) 131925, ¶ 74. First, "by the fact that the defendants made a discovery request that the District 'produce the records supporting its authority to proceed with the condemnation' " and second, "by the District's response 'claiming that the District in fact did have authority to proceed with the condemnation, when it in fact did not.' " *Id*.

¶ 33    We also addressed the District's argument that its representations in discovery actually "tipped off" Hoger to the invalidity of the Ordinance such that Hoger's failure to file a traverse was completely inexcusable. We rerouted the focus from Hoger's knowledge to District's misrepresentations, concluding that: "Especially considering the unique equities presented when

private property owners are faced with an eminent domain lawsuit brought by a governmental entity, the trial court could conclude that such property owners could rely on the condemning entity's explicit statements that the condemnation was based upon a valid ordinance." *Forest Preserve District*, 2015 IL App (1st) 131925, ¶ 76. We then directly addressed Hoger's knowledge, concluding that, "[n]otwithstanding the District's arguments that its responses should have 'tipped off' the defendants of possible defects in the May 1991 ordinance, the trial court could and did reasonably conclude that the defendants were not obligated to undertake further investigation in order to satisfy due diligence." *Id*., ¶ 76.

¶ 34    Finally, we considered the District's "separate procedural arguments" that the trial court should not have made any due diligence findings, let alone the findings of mutual mistake or active concealment on its part, without conducting an evidentiary hearing or allowing for discovery. *Forest Preserve District*, 2015 IL App (1st) 131925, ¶ 81. Though we acknowledged the procedural posture of the case as "complex and unusual," we declined to find error on the part of the trial court after viewing the record as a whole and the undisputed facts. *Id*., ¶ 82.

¶ 35    We first cited a decision of our Supreme Court which explained that trial courts may factor "equitable considerations" into its analysis "to relax the applicable due diligence standards under appropriate limited circumstances" (see *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 51) and then concluded, based in part on the fact that "the District falsely represented to the [Hoger] that the ordinance was valid" (*id*., ¶ 84), that the trial court did not err in finding that "either mutual mistake or fraud justified any delay by [Hoger] in bringing the section 2-1401 petition in this case." *Id*., ¶ 78.

¶ 36    Following our decision in *Forest Preserve District*, the case returned to the trial court for further proceedings. On December 7, 2016, Hoger filed a counterclaim against the District alleging

11

in part that the District intentionally misrepresented the validity of the Ordinance. Hoger also filed a petition for attorney's fees.

¶ 37    The District thereafter made an alleged "discovery." According to the District, Kelly's attorney had addressed a group of private landowners, including Hoger, and told them about possible defects in the District's enabling ordinance. The District also allegedly learned from Kelly, who was party to a condemnation proceeding, that she told Hoger about the possible defects in the Ordinance, hoping that he would join her and file a traverse in his own case. These events allegedly occurred before Hoger settled with the District and the Agreed Order was entered.

¶ 38    The District secured affidavits from Kelly and her attorney and attached them to a section 2-1401 petition, which they filed in the trial court on January 30, 2017. In the petition, the District argued that, had the trial court known Hoger had "actual knowledge" of the Ordinance's invalidity, it never would have entered judgment vacating its approval of the settlement agreement. Hoger moved to dismiss the petition claiming that the issues and claims were resolved in the prior trial court proceeding and on appeal in *Forest Preserve District*. The trial court denied Hoger's motion to dismiss, and he later moved for summary judgment on the same basis.

¶ 39    On March 19, 2019, the trial court entered a written order granting summary judgment in favor of Hoger and against the District. The trial court ruled that our decision in *Forest Preserve District* was "an insurmountable obstacle to the District's position" because our decision held that "Hoger's knowledge was *irrelevant* – not only was evidentiary hearing unnecessary, the District was not even entitled to *discovery*." The trial court specifically found that the District was using the same set of facts that formed the basis of our judgment to present a new "theory" of relief.

¶ 40    The trial court found that we expressly considered and rejected the District's argument that Hoger could not have been diligent because the District put him "on notice" that the Ordinance

was invalid when it gave him an unsigned copy in discovery and he still failed to file a traverse. The trial court reemphasized our finding that Hoger was "to rely on the condemning entity's explicit statements that the condemnation was based upon a valid ordinance."

¶ 41 On April 18, 2019, the District moved the trial court to reconsider its decision on the basis that was never afforded a full and fair opportunity in the prior proceeding to establish Hoger's knowledge in an evidentiary hearing. The District maintained that the exception of fundamental fairness required the trial court to find that *res judicata* should not be applied ("if *res judicata* applied, the preclusive effect of *res judicata* should be abated"). The trial court held a hearing on the motion to reconsider on September 23, 2019, and denied it. The District timely appealed.

¶ 42 On appeal, the District claims that "[t]he preclusive effect of *res judicata* can, and should be, abated." The District asks us to reverse the trial court's judgment. Hoger seeks affirmance.

¶ 43                                ANALYSIS

¶ 44 The parties dispute the applicable standard of review. The District claims, on one hand, that a grant of summary judgment is reviewed *de novo* and the trial court exercised no discretion when making its determination such that we should look at this case anew. Hoger, on the other hand, points out that the District only asked the trial court not to apply *res judicata* on the basis of fundamental unfairness when it moved for reconsideration. Hoger, therefore, asks us to review the denial of the motion to reconsider for an abuse of discretion.

¶ 45 Because the trial court's decision to grant summary judgment in favor of Hoger based on *res judicata* presents a question of law, our review is *de novo*. *Ward v. Decatur Memorial Hospital*, 2019 IL 123937, ¶ 44 (whether an action is barred by *res judicata* is a question of law that this court reviews *de novo*); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002) (the filing of a section 2-1401 petition is considered a new proceeding, not a continuation of the old

one).

¶ 46 The District in its opening brief unequivocally states that "*res judicata* applies to prevent further consideration of the issue of Hoger's due diligence based upon the status of his knowledge of the Defects" in the Ordinance. It then goes on to state that "the issue raised here is not whether *res judicata* applies, but whether its preclusory effect should be abated." Based on the District's statements, we turn to address the question of whether it would be fundamentally unfair to apply *res judicata* to this case.

¶ 47 *Res judicata* is an equitable doctrine designed to prevent multiple lawsuits between the same parties where the facts and issues are the same. *Lutkauskas v. Ricker*, 2015 IL 117090, ¶ 44. The doctrine extends not only to what was actually decided in the original action, but also to matters which could have been decided in that suit. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334-35 (1996). The following three requirements must be satisfied in order for *res judicata* to apply: (1) a final judgment on the merits has been rendered by a court of competent jurisdiction; (2) an identity of cause of action exists; and (3) the parties or their privies are identical in both actions. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

¶ 48 A cause of action is defined by the facts that give a plaintiff a right to relief. *Weisman v. Schiller, Ducanto & Fleck*, 314 Ill. App. 3d 577, 579 (2000) (citing *Rein,* 172 Ill. 2d at 338). When determining whether there is an identity of causes of action, Illinois courts apply the transactional test. *River Park, Inc. v. City of Highland Park*, 184 Ill. 2d 290, 311 (1998). Under this approach, separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different kinds or theories of relief. *Id*.

¶ 49 Courts will not apply *res judicata* where principles of fundamental fairness require a

14

relaxation of the doctrine. See *Nowak v. St. Rita High School*, 197 Ill. 2d 381, 390 (2001). Courts will not apply *res judicata* when "it is clearly and convincingly shown that the policies favoring preclusion of a second action are overcome for an extraordinary reason." *Rein*, 172 Ill. 2d at 341 (quoting Restatement (Second) of Judgments § 26(1) (1980)) (cited as exception to claim-splitting). The District contends that this is an "extraordinary" and "unusual" case such that the prevailing equities should balance in its favor and *res judicata* should not be applied. It is the District's burden to establish the application of this exception. *Venturella v. Dreyfuss*, 2017 IL App (1st) 160565, ¶ 32.

¶ 50    We have reviewed the record and find that, contrary to the District's contentions in its opening brief that the prior proceedings failed to comport with the minimum requirements of due process, no fundamental unfairness will result upon the application of *res judicata* to this case. As we explained in *Forest Preserve District*: in the context of a section 2-1401 proceeding when addressing whether the due diligence requirements have been met the need for an evidentiary hearing is not absolute, but rather can be relaxed in the interests of equity. Such is the state of the law as determined by our Supreme court. See *Warren County*, 2015 IL 117783, ¶ 51. The District focuses its attention to the first sentence of the pertinent section in *Warren County*—"when the facts supporting the section 2-1401 petition are challenged by the respondent, a full and fair evidentiary hearing should be held"—and turns a blind eye to the sentence that follows—"the trial court may also consider equitable considerations to relax the applicable due diligence standards under the appropriate limited circumstances." *Id*.

¶ 51    Based on *Warren County*, we concluded in *Forest Preserve District*, 2015 IL App (1st) 131925, ¶86, that no evidentiary hearing was necessary to support the trial court's findings that the due diligence requirements of section 2-1401 were established through the District's "active

concealment" of the validity of the Ordinance. Our decision was based on several critically important equitable considerations and the voluminous record, as a whole. Factoring into our decision was: (1) the fact that the Ordinance's invalidity had been established; (2) the District's misconduct in "falsely represent[ing] to [Hoger] that the ordinance was valid"; (3) the District's pleading which affirmatively cited the Ordinance as basis of its enabling authority and its tender of a copy of the unsigned Ordinance in response to Hoger's request to produce the source of enabling authority; (4) the District's continued position that the Ordinance was valid but the record of the adoptive proceeding was not; (5) the District's attempt to correct its glaringly invalid adoptive procedure *post hoc* through a "curative" ordinance; and finally (6) the District's continued position that it was not its misrepresentations, but Hoger's failure to recognize them as such was the central focus of the litigation and warranted the denial of his request for relief on the basis of a lack of due diligence. *Forest Preserve District*, 2015 IL App (1st) 131925, ¶¶ 76-86.

¶ 52    We agree with the District that was unusual but find that it was only that way because the District's actions made it as such. Our decision in *Forest Preserve District* made clear that the equities did not favor the District such that, in the context of the 2-1401 proceeding, the requirement of an evidentiary hearing could and should be relaxed. We have no occasion, nor do we see a reason, to revisit that settled determination.

¶ 53    We reject the District's position that not only did it not litigate Hoger's knowledge, because its evidence is newly discovered, but that it could not do so, because the proceeding was not full and fair on account of the absence of a "required" evidentiary hearing. We find that, not only was the opportunity afforded to litigate the issues related to Hoger's due diligence full and fair, the adjudication and resolution of those issues in the prior proceeding could and did factor in the Hoger's potential awareness and knowledge of the Ordinance's invalidity at the time the Agreed

Order was entered, and more importantly, the lack of an obligation on his part to actually acquire it.

¶ 54    As we discussed *Forest Preserve District,* the District expressly raised the issue of Hoger's knowledge, arguing that, "after having been provided with the unsigned, and therefore, allegedly defective, Ordinance, even though they were tipped off to a possible problem because it was unsigned, [Hoger] did nothing to challenge [the District's] authority or investigate the validity of the Ordinance. *Forest Preserve District*, 2015 IL App (1st) 131925, ¶ 75. We expressly found that "[n]otwithstanding the District's arguments that its responses should have 'tipped off' the defendants of possible defects in the May 1991 ordinance, the trial court could and did reasonably conclude that the defendants were not obligated to undertake further investigation in order to satisfy due diligence." *Id*., ¶ 75.

¶ 55    This finding resolved the issue of Hoger's knowledge of the invalidity of the Ordinance (and as the trial court stated, its "irrelevance") because we expressly indicated that Hoger was under no obligation to undertake further investigation to acquire knowledge of the Ordinance's invalidity, beyond being "tipped off," to satisfy the requirements of due diligence. Hoger's knowledge was deemed at the very least, irrelevant for due diligence purposes, and at most, excused in light of the District's repeated misrepresentations as to the validity of the Ordinance.

¶ 56    The fact of the matter is that Hoger sought section 2-1401 relief after the formal invalidation of the Ordinance's adoptive procedure by the lower courts and up until that point (and even well after) the District maintained with a vengeance that its eminent domain cases had the support of a valid enabling ordinance. The District does not dispute the fact that, at the time Kelly's attorney allegedly gave his presentation to the private landowners, and Kelly allegedly spoke with Hoger about possible defenses, a court of law had not entered judgment invalidating the Ordinance.

17

¶ 57 We roundly reject the District's contention that "Hoger is not a victim, but a potential victimizer," because it unjustifiably shifts the focus away from its own serious misrepresentations. As we stated in no uncertain terms in *Forest Preserve District*, "considering the unique equities presented when private property owners are faced with an eminent domain lawsuit brought by a governmental entity, the trial court could conclude that such property owners could rely on the condemning entity's explicit statements that the condemnation was based upon a valid ordinance." *Forest Preserve District*, 2015 IL App (1st) 131925, ¶ 76. The District's position turns our decision in *Forest Preserve District* on its head. The District's attempt to refocus our attention away from what matters in this case has proven unavailing.

¶ 58 We hold that the District has failed to carry its burden of demonstrating that the circumstances and particularly, the lack of an evidentiary hearing to determine the issue of due diligence in the prior proceeding, were so extraordinary that fundamental unfairness would result from the application of *res judicata* to this case.

¶ 59                                     CONCLUSION

¶ 60 Accordingly, we affirm.

¶ 61 Affirmed.